Nicholas David WAUGH, Appellant,

v.

STATE of Texas, Appellee.

No. 11–00–00281–CR.

Court of Appeals of Texas,
Eastland.

May 24, 2001.

Lynn Ingalsbe, Abilene, for appellant.

James Eidson, Criminal District Attorney, Kollin Shadle, Appellate Section, Criminal District Attorney's Office, Abilene, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT and McCALL, JJ.

### Opinion

McCALL, Justice.

Appellant pleaded guilty, without the benefit of a plea bargain, to possession of less than two ounces of marihuana.[1] The trial court accepted his plea, deferred adjudication of guilt, and placed appellant on community supervision for 12 months.[2] The trial court granted him permission to appeal the trial court's denial of his motion to suppress. We affirm.

### Background Facts

On February 16, 2000, around 10:30 p.m., Officer Brent Irby of the Abilene Police Department responded to a "loud music call" at 1387 Austin. The house at that address was located along a creek bank and was constructed on wooden "piers," which elevated the house approximately 15 feet above the ground. A flight of stairs led to a narrow balcony that extended across most of the front of the house. At the head of the stairs was the front door of the house, which was apparently the only entrance or exit for the building. When Officer Irby arrived at the property, he could not tell whether the music was coming from inside the house. As he walked toward the house, he determined that the music was coming from a group of people sitting around a campfire behind the house.

Officer Irby, however, glanced up and noticed that the front door of the house was open. The lights were on inside the house, and he could see a large "bong," or marihuana pipe, sitting on a table near the door. Officer Irby recognized the bong from his training and experience on the police force. He observed all these things from the ground. He then walked underneath the house to the people around the campfire and asked who lived in the house. Appellant, James Michael Lockwood, and Courtney Lamb stood up. Officer Irby

---

1. TEX.HEALTH & SAFETY CODE ANN. § 481.121 (Vernon Supp.2001) defines the offense. It is a Class B misdemeanor. Section 481.121(b).

2. See TEX.CODE CRIM.PRO.ANN. art. 42.12, § 3(a) and (c) (Vernon Supp.2001).

"advised them that the music was-got a loud music complaint, that they needed to quiet it down." He then asked if he could speak to the three of them "up at the residence."

The three consented, and the four of them walked back to the house. Lockwood proceeded to walk up the stairs, followed by Officer Irby, who was followed by appellant and Lamb. When Lockwood reached the door, he went into the house and attempted to push the door shut behind him. Officer Irby, however, stopped the door with his foot. He saw Lockwood carrying the bong into the back of the house. Officer Irby followed him to a back bedroom where Lockwood put the bong down. Officer Irby took Lockwood back to the living room; Lamb and appellant were standing there. Officer Irby told the three to sit on the couch and informed them that they were under arrest. He then called for backup. After two other officers arrived, the officers read the three their rights and questioned them. The officers also "patted down" the three suspects; they found some marihuana smoking pipes and rolling papers on appellant's person.

When the suspects refused to give consent to search the house, the officers obtained a search warrant. The inventory appended to the return of the warrant lists 44 items that were seized, including several marihuana smoking pipes, "dope writings," and marihuana seeds and stems. Appellant moved to suppress all of the items. The trial court, after hearing testimony from Officer Irby, denied the motion.

## Standard of Review

When reviewing a trial court's ruling on a motion to suppress, the appellate court must give great deference to the trial court's findings of historical facts, as long as the record supports them. *Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Cr. App.1997); *Davila v. State,* 4 S.W.3d 844, 847 (Tex.App.—Eastland 1999, no pet'n); see *Daniels v. State,* 718 S.W.2d 702, 704 (Tex.Cr.App.), *cert. den'd,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986) (the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling because the trial court is the exclusive finder of fact). The appellate court reviews de novo questions of law and mixed questions of law and fact, unless the mixed question is highly dependent on the trial court's finding of historical facts. *Guzman v. State, supra.* The trial court's findings of fact are controlling unless the trial court abused its discretion in making them. *Guzman v. State, supra; State v. Steelman,* 16 S.W.3d 483, 486 (Tex.App.Eastland 2000, pet'n granted).

Appellant moved to suppress the evidence under both U.S. CONST. amends. IV and XIV and TEX.CONST. art. I, § 9. Although Texas courts are not bound by the Fourth Amendment jurisprudence of the United States Supreme Court when interpreting Article I, section 9 of the Texas Constitution, they generally follow those cases. *Aitch v. State,* 879 S.W.2d 167, 171–72 (Tex.App.—Houston [14th Dist.] 1994, pet'n ref'd). Neither appellant nor the State urges any reason to interpret Article I, section 9 differently from the Fourth Amendment; therefore, we will interpret the two provisions consistently with each other. See *Carmouche v. State,* 10 S.W.3d 323, 326 n. 1 (Tex.Cr.App.2000).

## Analysis

The trial court, in its order denying the motion to suppress, made four "findings":

1. The officer's seeing the bong in plain view from the front of the house as he walked toward the people congregat-

ed in the yard constituted probable cause for the issuance of a search warrant. While it is possible a bong can be something other than narcotic paraphernalia, a reasonable person would think more likely than not it was not an art object but paraphernalia.

2. One officer was confronted with a number of people gathered and had reason to take steps to speak about the offense he had observed in more controlled circumstances.

3. The undisputed testimony is that the three residents of the house identified themselves and consented to going to the house with the officer, thereby explicitly consenting to his entry by their actions.

4. If the invitation allowing the officer to enter the house was withdrawn, it was done in a manner that instigated exigent circumstances for his entry into the house, and his entry therefore was not improper.

Appellant disputes the validity of the first, third, and fourth findings. He does not dispute that the magistrate properly issued the subsequent search warrant based on the information the officers provided. Rather, appellant contends that the information used to secure the warrant was tainted because it was obtained after Officer Irby entered the house illegally. Thus, the only issue in this case is whether Officer Irby could enter the house without a warrant.

■ Bongs are listed specifically under the definition of "drug paraphernalia" in the Controlled Substances Act. TEX. HEALTH & SAFETY CODE ANN. § 481.002(17)(L)(x) (Vernon Supp.2001). Appellant argues that Officer Irby could not have probable cause to obtain a search warrant after merely seeing the bong on the table because the Act proscribes the possession of a bong that is "used or in-tended for use in ingesting, inhaling, or otherwise introducing marihuana ... into the human body." See TEX.HEALTH & SAFETY CODE ANN. § 481.002(17)(L) (Vernon Supp.2001); see also TEX. HEALTH & SAFETY CODE ANN. § 481.125 (Vernon Supp.2001). Appellant contends that Officer Irby could not tell from the ground whether the bong was a curio or was contraband. This case underscores the fact that probable cause to search is not the same thing as sufficient evidence to convict. Whether the bong was "drug paraphernalia" as proscribed by the Act is immaterial to the question of whether the sight of the bong would give rise to probable cause to support a search or seizure. A police officer possesses probable cause to seize an item as contraband if "the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband." *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (Citation and internal quotations omitted). The law "does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown, supra*. The trial court correctly concluded that Officer Irby, based on his experience and training, possessed probable cause to obtain a search warrant after he saw the bong in the house.

■ Officer Irby, however, did not need to have probable cause to begin an investigation or to detain appellant, Lockwood, or Lamb after they identified themselves as the residents of the house. Rather, he only needed reasonable suspicion, a reasonable belief based on specific and articulable facts, that would justify such intrusions. See *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Because he had probable cause, Officer Irby necessarily possessed a reasonable suspicion when he approached the group

around the campfire to investigate and then detained appellant, Lockwood, and Lamb. The three consented to accompany Officer Irby back to the house. Even if the mere sight of the bong in plain view did not give Officer Irby probable cause or reasonable suspicion, their consent to go to the house would attenuate any prior illegality in Officer Irby's investigation or detention. See *Reasor v. State*, 12 S.W.3d 813, 819 (Tex.Cr.App.2000) (suspect's consent to search attenuated the taint from an earlier illegal protective sweep).

■ Lockwood, not Officer Irby, led the way to the house. Appellant and Lamb followed without complaint. Although the group could have stopped at the bottom of the stairs, Lockwood walked up them. Stairs leading to a balcony that is 15 feet above the ground are not the same as steps leading up a few feet or less to a stoop or porch. The only reason to go up the stairs would be to enter the house. The trial court did not commit an abuse of discretion in finding that appellant and his friends consented to Officer Irby's entry into the house. That fact, however, is not dispositive to the case because of Lockwood's attempt to shut Officer Irby out of the house.

■ A police officer may enter a house without a warrant under exigent circumstances, such as during the hot pursuit of a fleeing suspect. *Welsh v. Wiscon-*

*sin*, 466 U.S. 740, 749–50, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *United States v. Santana*, 427 U.S. 38, 42–43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).[3] The possible destruction of evidence also allows the police to make a warrantless entry into a house. See *Vale v. Louisiana*, 399 U.S. 30, 34–35, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

■ Lockwood's attempt to flee into the house and to shut Officer Irby out of the house created exigent circumstances. When Lockwood attempted to push the door shut before Officer Irby entered the house, he committed the offense of evading detention or arrest. See TEX.PENAL CODE ANN. § 38.04(a) (Vernon Supp. 2001). Officer Irby could pursue and arrest Lockwood without a warrant for committing an offense in his presence or view. See TEX.CODE CRIM.PRO.ANN. art. 14.01(b) (Vernon 1977). The record indicates that Officer Irby pushed the door back open and observed Lockwood carrying the bong from the living room. Officer Irby could have reasonably construed Lockwood's actions as an attempt to destroy or conceal evidence.[4] The trial court did not commit an abuse of discretion in finding that Lockwood created exigent circumstances that justified Officer Irby's warrantless entry into the house.

Appellant argues that this case is governed by our recent decision in *State v.*

---

**3.** The Supreme Court in *Welsh* decided that a nonjailable, civil traffic offense was not sufficiently serious to allow a warrantless entry when there was no immediate or continuous pursuit. *Welsh v. Wisconsin, supra* at 754, 104 S.Ct. 2091. The Court left open the question of whether only hot pursuit of a suspected felon constituted exigent circumstances. *Welsh v. Wisconsin, supra* at 750 n. 11, 104 S.Ct. 2091. The court in *Winter v. State*, 902 S.W.2d 571 (Tex.App.—Houston [1st Dist.] 1995, no pet'n), held that a police officer could make a warrantless entry into a home if he was in hot pursuit of a suspect who com-

mitted a misdemeanor punishable by confinement in jail. The court in *LaHaye v. State*, 1 S.W.3d 149 (Tex.App.—Texarkana 1999, pet'n ref'd), came to the same conclusion. We also agree. Evading detention and attempting to destroy or conceal evidence during an investigation are jailable offenses, and Officer Irby was in immediate pursuit of Lockwood.

**4.** The destruction or concealment of evidence during an investigation is a third degree felony. See TEX.PENAL CODE ANN. § 37.09 (Vernon Supp.2001).

*Steelman, supra,* where we affirmed the trial court's granting of a motion to suppress. *Steelman,* however, is distinguishable. First, in *Steelman,* the police went to the defendants' door solely because of a vague anonymous tip. They did not have a reasonable suspicion to investigate or to detain the Steelmans initially. *State v. Steelman, supra* at 490 n. 3. Second, the window blinds in *Steelman* were tightly closed, and the defendant who answered the door stepped onto the porch and closed the door behind him. The Steelmans exhibited a subjective expectation of privacy in their home. *State v. Steelman, supra* at 489; see Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); cf. Rodriguez v. State, 653 S.W.2d 305 (Tex.Cr.App.1983)(officer observed defendant and his friends smoking narcotics in the next room from a legal vantage point in the open doorway of defendant's apartment). Third, the defendant in *Steelman* attempted to reenter the house to retrieve his identification at the behest of the police officers. At that point, the officers prevented his re-closing the door and forced their way into the house. *State v. Steelman, supra* at 486.

In the present case, Officer Irby went to appellant's house because of a loud music call. When he got out of his patrol car, he heard loud music. On the way to speak with those who were making the noise, Officer Irby saw the bong sitting on a table in the lighted living room near the open door of the house. Officer Irby possessed more than a reasonable suspicion to support his investigation and detention of appellant, Lockwood, and Lamb. The three residents of the house could have no subjective expectation of privacy as to the bong. Officer Irby made his observations from the ground in front of the door. Finally, Lockwood entered the house in an attempt to flee from Officer Irby and to conceal the bong. The reasoning behind *Steelman* is inapplicable to the case at bar.

The trial court did not commit an abuse of discretion in denying appellant's motion to suppress. We overrule the sole point of error.

*This Court's Ruling*

The judgment of the trial court is affirmed.