**Christopher Dean RANDOLPH,**
**Appellant**

**v.**

**The STATE of Texas, Appellee.**

**No. 05–03–00793–CR.**

Court of Appeals of Texas,
Dallas.

Dec. 6, 2004.

Robert Udashen, Kevin B. Ross, Sorrels & Udashen, Dallas, Nathan Kight, Irving, for appellant.

John R. Roach, Collin County District Attorney, Katharine K. Decker, McKinney, for the State.

Before Justices FITZGERALD, RICHTER, and LANG.

## OPINION

Opinion by Justice LANG.

Christopher Dean Randolph appeals his conviction, after a bench trial, for driving while intoxicated, claiming error in the trial court's denial of his motion to suppress. Appellant brings two issues on appeal: (1) the trial court erred in denying his motion to suppress because the police officer entered appellant's garage without a warrant, probable cause, or exigent circumstances in violation of the Fourth Amendment of the United States Constitution and Article 1, § 9 of the Texas Constitution;[1] and (2) the trial court erred in denying his motion to suppress because, under article 14.03(a)(4) of the Texas Code of Criminal Procedure, the police officer had no statutory authority to enter appellant's garage and seize him.

The resolution of this appeal requires us to analyze a patchwork of facts. The story begins with Stacy Randolph's complaint to the police that appellant, her husband, assaulted her and that he left the house intoxicated, driving his Porsche automobile. When appellant returned home, the investigating officer confronted appellant in his garage as he left his car and headed into his house. It was at that point the officer smelled alcohol on appellant's breath and he began investigating the

driving while intoxicated charge. Appellant's motion to suppress claimed that the officer unlawfully entered his garage and the driving while intoxicated investigation was unlawful. We conclude the trial court did not err in denying appellant's motion to suppress. Accordingly, appellant's issues are decided against him and we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to his wife, Stacy Randolph, appellant came home intoxicated. Ms. Randolph did not want him to go out again because she was seven and one-half months pregnant, she thought that if he left he might not return, and she was concerned about him driving while intoxicated. Consequently, she tried to hide his car keys. In response, appellant attempted to kick down the door of the room where his wife went with the car keys, causing Ms. Randolph to call 9–1–1. After her 9–1–1 call was answered, Ms. Randolph hung up the telephone without speaking. Appellant entered the room, hit his wife in the back of the head, and took the car keys. Afterward, Ms. Randolph heard her husband leave. Officer Quillin of the Plano Police Department received a dispatch regarding the 9–1–1 hang-up call originating from appellant's residence and arrived at the house approximately five minutes later. When Officer Quillin arrived at the Randolphs' house,[2] he knocked

---

1. As appellant has not distinguished between his rights afforded under the state and federal constitutions, we address only the federal constitution. *Johnson v. State*, 853 S.W.2d 527, 533 (Tex.Crim.App.1992)

2. The front of the Randolphs' house faces the street. The portion of the house that faces and runs parallel to the street is approximately 140 feet to 160 feet long. The front door is located in the middle of the house and faces the street. The garage is attached to the rear

of the house. The garage door faces the side of the lot. Two driveways run from the front of the house and meet in front of the garage. One driveway is shaped as an irregular "L." It begins at the street and runs perpendicular to the street, along one side of the house and the property border. When the driveway reaches the rear of the house, it turns toward the middle of the lot and runs behind the house, parallel to the street until it reaches the garage. The second driveway does not open to the street, but begins at the sidewalk

on the front door, but no one answered. As a result, Officer Quillin decided to check for signs of a struggle or any other problem. To do so, he inspected the perimeter of the residence and walked through the porte-cochère that leads to the back of the house and the garage. As Officer Quillin passed through the porte-cochère and reached the side door in the rear of the residence, he shined his flashlight into the house and saw Ms. Randolph walking in the hallway. Ms. Randolph saw the officer and let him into her house.

Ms. Randolph told Officer Quillin about the incident, that her husband was drunk, and that he had left to purchase drugs. Ms. Randolph provided Officer Quillin with a written statement and descriptions of appellant's attire and the silver Porsche he was driving. In addition, Officer Quillin asked Ms. Randolph whether she needed medical attention for her injuries, and she responded that she did not. No photographs were taken of her. Officer Quillin also advised Ms. Randolph that she had the right to obtain an emergency protective order and gave her information on how to procure one.

Meanwhile, Officers Cavin and Pfahning were dispatched to find the silver Porsche because of the 9-1-1 call regarding the assault and because the driver was believed to be intoxicated. The officers drove around the vicinity, checking area restaurants and bars.

After obtaining Ms. Randolph's written statement, Officer Quillin drove down the street and parked near the Randolphs' house. There, he wrote his offense report and watched for appellant's possible return. Approximately 45 minutes after the initial 9-1-1 call, Officer Quillin was completing his offense report when he observed a silver Porsche turn onto appellant's street and pull into appellant's driveway. The silver Porsche was not moving erratically or weaving. Officer Quillin returned to the house so that he could speak with appellant about the assault. He parked in front of the house. Through the passenger seat window of his patrol car, he looked through the porte-cochère and observed appellant maneuvering the silver Porsche into the garage. Officer Quillin exited his patrol car and walked through the porte-cochère where he observed appellant standing near the silver Porsche inside the garage.

Calling appellant by name, Officer Quillin identified himself as a police officer and told appellant that he wanted to speak with him. At that point, appellant, who was still standing near his Porsche inside his garage, turned around and acknowledged the officer's presence. Then, appellant turned around slowly and started walking toward the back of the garage and the door to the house. Officer Quillin entered the garage, made contact with appellant, smelled a strong odor of alcohol on appellant, and observed that appellant was staggering. Appellant was advised by Officer Quillin that he was "detaining" appellant for the assault and he escorted appellant out of the garage. Once out of the garage, for his own safety and because he was the only officer present, Officer Quillin handcuffed appellant. Then, he walked appellant to the front of the house to wait for his back-up. Contrary to the State's contention that at this stage appellant was

in front of the house, passes through a porte-cochère, which is part of the house's structure, and meets the first driveway in front of the garage, at the back of the house. There are no fences around the house, but a wall, approximately seven or eight feet high, is located at the side of the house on the edge of the property between the first driveway that opens to the street and the neighboring house.

detained, appellant claims he was, under the facts, arrested.

Officers Cavin and Pfahning arrived at appellant's house approximately three or four minutes after Officer Quillin walked appellant to the front of the house. Upon their arrival, the officers removed the handcuffs and advised appellant that he was not under arrest. Officers Cavin and Pfahning gave appellant the field sobriety tests. Based upon their observations during the field sobriety tests, Officers Cavin and Pfahning arrested appellant for driving while intoxicated and transported him to the jail.

Appellant was charged by information with the offense of driving while intoxicated. Prior to trial, appellant filed a motion to suppress the evidence obtained respecting appellant's intoxication after Officer Quillin entered his garage. Officer Quillin was the only witness to testify at the hearing on appellant's motion to suppress. The trial court denied appellant's motion. During the trial, appellant's motion to suppress was reargued, and the trial court again denied his request to suppress the evidence obtained respecting the driving while intoxicated charge after Officer Quillin entered his garage. After the hearing on appellant's motion to suppress, the trial court made findings of fact and conclusions of law,[3] but amended them after reconsidering the issue at trial.

At the conclusion of the bench trial, the trial court found appellant guilty of misdemeanor driving while intoxicated. Appellant was sentenced to ninety days of confinement in the county jail and fined $1,600. The trial court suspended the sentence and ordered that appellant be placed on two years of community supervision. Appellant appeals his conviction claiming the errors that are described above in the trial court's denial of his motion to suppress.

## II. STANDARD OF REVIEW

A bifurcated standard of review is applied to a trial court's ruling on a motion to suppress evidence. This standard of review gives almost total deference to a trial court's determination of historical facts and applies a de novo review of a trial court's application of the law to those facts. See *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). A trial court is the sole trier of fact, the judge of witness credibility, and the determiner of the weight given to witness testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000).

When a trial court rules on a motion to suppress evidence, its application of the law of search and seizure is reviewed de novo. *Walter v. State*, 28 S.W.3d 538, 540 (Tex.Crim.App.2000). A trial court's determinations of reasonable suspicion and probable cause are also reviewed de novo. *Ornelas v. United States*, 517 U.S. 690, 696–99, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *accord Guzman*, 955 S.W.2d at 87; *see also State v. Crawford*, 120 S.W.3d 508, 510 (Tex.App.-Dallas 2003, no pet.). If a trial court's decision is correct on any theory of law applicable to the case, the decision will be sustained. *Ross*, 32 S.W.3d at 855–56; *see also Singleton v. State*, 91 S.W.3d 342, 346 (Tex.App.-Texarkana 2002, no pet.).

## III. CONSTITUTIONALITY OF OFFICER'S ENTRY INTO APPELLANT'S GARAGE

Initially, the State and appellant address the issues of whether Officer

3. We take notice that throughout the reporter's record, the trial court's statements are mistranscribed as referring to the officer's "action of circumstance." However, it is apparent by reading the entire record and from the context of the trial court's statements that it was discussing "exigent circumstances."

Quillin's confrontation of appellant was a detention or an arrest and whether appellant's garage with its door open is a constitutionally protected area.[4] In order to resolve appellant's points on appeal, we need not decide these issues. We will assume without deciding that Officer Quillin arrested appellant, rather than simply detaining him, and the garage was a constitutionally protected area. Now, we address appellant's central claim that the evidence obtained by Officer Quillin should be suppressed from the point in time when Officer Quillin entered appellant's garage and stood next to appellant observing that appellant appeared to be intoxicated.

██ The parties agree that police officers need probable cause to arrest plus exigent circumstances that make procuring a warrant impracticable, in order to lawfully enter a residence and make a warrantless arrest. *Payton v. New York,* 445 U.S. 573, 583–590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980);[5] *see also Kirk v. Louisiana,* 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002); *Welsh v. Wisconsin,* 466 U.S. 740, 749, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *Winter v. State,* 902 S.W.2d 571, 573 (Tex.App.-Houston [1st Dist.] 1995, no pet.). In the case before us, if exigent circumstances existed for Officer Quillin's actions, then Officer Quillin was legally authorized to enter the garage, even if it was a constitutionally protected area, and Officer Quillin was au-

thorized to seize appellant and escort him, as he did, to the street, where he was subsequently administered sobriety tests and placed in custody.

### a) applicable law

██ In reviewing a warrantless arrest to determine the existence of probable cause, we look to the facts known to the officer at the time of the arrest. *Amores v. State,* 816 S.W.2d 407, 415 (Tex.Crim. App.1991). It is not necessary for an officer to have first-hand knowledge of an offense. *See Astran v. State,* 799 S.W.2d 761, 763 (Tex.Crim.App.1990). Whether probable cause exists is determined by applying the "totality of the circumstances" test. *Amores,* 816 S.W.2d at 413. The standard for the legality of a warrantless arrest is not equal to the sufficiency of the evidence for a conviction; the standard is probable cause, not proof beyond a reasonable doubt. *Delgado v. State,* 718 S.W.2d 718, 720–21 (Tex.Crim.App.1986). The State bears the burden to prove the existence of probable cause to justify a warrantless arrest or search. *Amores,* 816 S.W.2d at 413. An officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge, and of which he has reasonable trustworthy information, are sufficient to warrant a person of reasonable caution to believe that a particular person has committed or is committing an offense. *Id.* The Supreme Court has repeatedly stated:

---

4. As emphasized in *California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986), "the touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *Id.* (quoting *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)).

5. In *Payton,* the Supreme Court stated that "physical entry of the home is the chief evil against which the wording of the Fourth

Amendment is directed." *Payton,* 445 U.S. at 585, 100 S.Ct. 1371. The Fourth Amendment requires that searches of the home be reasonable. *Illinois v. Rodriguez,* 497 U.S. 177, 185–86, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Appellant does not complain of the officer's movement up the driveway of the residence to the point where appellant was observed inside the garage. *See U.S. v. Carter,* 360 F.3d 1235, 1239–40 (10th Cir.2004).

"[P]robable cause" to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.

*Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *see also Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). The same probable cause required for a lawful arrest is required in order to detain and remove a person from his home. *See Hayes v. Florida,* 470 U.S. 811, 816–17, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985).

■■■■■ A person may be validly detained or arrested for one offense when an officer actually desires to investigate him for a different offense. *Garcia v. State,* 827 S.W.2d 937, 939–44 (Tex.Crim.App. 1992); *see Walter,* 28 S.W.3d at 543; *see also Singleton,* 91 S.W.3d at 347; *Fletcher v. State,* 90 S.W.3d 419, 421 (Tex.App.-Amarillo 2002, no pet.). An objective standard is applied to determine the validity of the first arrest which leads to another arrest. *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The objective standard is based on the reasoning that a reasonable officer in the same situation would have reasonable suspicion to execute the stop or probable cause to arrest, and therefore, nothing objectively unlawful would have been done. *See Singleton,* 91 S.W.3d at 347.

Applying an objective standard, even if Officer Quillin arrested appellant for the alleged assault solely to investigate him for the offense of driving while intoxicated, Officer Quillin's intent is of no consequence as long as the initial arrest for the alleged assault was valid. *See Garcia,* 827 S.W.2d at 939–44; *see also Walter,* 28 S.W.3d at

543; *Singleton,* 91 S.W.3d at 347; *Fletcher,* 90 S.W.3d at 421.

■■■■■ Exigent circumstances embrace situations in which real, immediate, and serious consequences will certainly occur if a police officer postpones action to obtain a warrant. *Welsh,* 466 U.S. at 751, 104 S.Ct. 2091. Exigent circumstances affecting the validity of a warrantless entry into a residence resulting in an arrest include the following: (1) a risk of danger to the police or *the victim;* (2) an increased likelihood of apprehending a suspect; (3) possible destruction of evidence or contraband; (4) hot or continuous pursuit; and (5) rendering aid or assistance to persons who the officer reasonably believes are in need of assistance. *See Minnesota v. Olson,* 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); *Steagald v. United States,* 451 U.S. 204, 218, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *McNairy v. State,* 835 S.W.2d 101, 107 (Tex.Crim.App.1991); *Ramirez v. State,* 105 S.W.3d 730, 743–44 (Tex.App.-Austin 2003, no pet.); *Beaver v. State,* 106 S.W.3d 243, 247 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd); *Waugh v. State,* 51 S.W.3d 714, 718 (Tex. App.-Eastland 2001, no pet.). *See also* 40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 7.57 (2d ed. 2001).

■■■■■ The validity of a warrantless seizure of a suspect in a constitutionally protected area is also determined by the seriousness of the offense. The warrantless entry of a constitutionally protected area to arrest or detain a suspect for a nonjailable offense is not permissible. *See Welsh,* 466 U.S. at 754, 104 S.Ct. 2091; *see also LaHaye v. State,* 1 S.W.3d 149, 152 (Tex.App.-Texarkana 1999, pet. ref'd); *Winter,* 902 S.W.2d at 574. However, if an offense, either a misdemeanor or a felony, is punishable by confinement and there are exigent circumstances, then it is serious

enough to justify the warrantless entry of a constitutionally protected area. *See generally Welsh*, 466 U.S. at 754, 104 S.Ct. 2091 (a nonjailable, civil traffic offense in the absence of exigent circumstances was not sufficiently serious to allow a warrantless entry); *Waugh*, 51 S.W.3d at 719 n. 3 (discussing *Welsh, Winter,* and *LaHaye*); *LaHaye*, 1 S.W.3d at 152 (the misdemeanor crime of evading arrest was a serious enough crime that officers in hot pursuit could enter a residence without a warrant and arrest an offender); *Winter*, 902 S.W.2d at 573–74 (a police officer could make a warrantless entry into a home if he was in hot pursuit of a suspect who committed a misdemeanor offense punishable by confinement in jail); Op. Tex. Att'y Gen. No. JM–751 (1987) (discussing constitutionality of certain subsections of article 14.03 of the Code of Criminal Procedure in situations involving warrantless arrests in certain misdemeanor cases involving family violence).

■ Appellant argues that the alleged assault falls under §§ 22.01(a)(3) and (c) of the Texas Penal Code, which make it punishable only by a fine. Hence, he claims his warrantless arrest for assault in the constitutionally protected area of his garage was not a serious enough offense to permit an officer to enter his residence even if exigent circumstances existed. However, while that specific provision of the assault statute is a nonjailable offense, assault, in general, and driving while intoxicated are both jailable misdemeanor offenses. *See* Tex. Penal Code Ann. §§ 22.01, 49.04 (Vernon 2003 & Supp. 2004–05). Because assault is punishable by confinement in jail, it is a serious enough offense to justify the warrantless entry of a constitutionally protected area. *See Illinois v. McArthur*, 531 U.S. 326, 336, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001);

*LaHaye*, 1 S.W.3d at 152; *Winter*, 902 S.W.2d at 573–74.

#### b) application of the law to the facts

The record reflects that Ms. Randolph told Officer Quillin that appellant had hit her, he had been drinking, and she thought he had gone to buy drugs. Officer Quillin testified that based upon her demeanor, statements, and actions, he believed that Ms. Randolph was afraid. At trial, Ms. Randolph contradicted Officer Quillin's testimony stating that she told him that she was not afraid because in the past when appellant got like this, he stayed in a hotel. The trial court specifically found, when dictating its findings and conclusions into the record, that Officer Quillin's testimony was credible regarding his belief that Ms. Randolph was afraid her husband might return to the house to assault her or continue to assault her. *See Murphy v. State*, 112 S.W.3d 592, 601 (Tex.Crim.App. 2003), *cert. denied* 541 U.S. 940, 124 S.Ct. 1660, 158 L.Ed.2d 363 (2004); *Ross*, 32 S.W.3d at 855. In addition, the record reflects that Officer Quillin remained in the area to see if appellant returned to the house, and that while he was working on his offense report, he observed appellant return, and he followed appellant to the house. Also, Officer Quillin testified that he believed it was his duty to make contact with appellant because he was concerned that appellant might reenter the house and continue to assault Ms. Randolph.

■ Appellant argues that there were no exigent circumstances because Officer Quillin was not in hot pursuit of appellant. However, hot pursuit is not the only situation that may give rise to exigent circumstances. *See, e.g., McNairy*, 835 S.W.2d at 107; *Ramirez*, 105 S.W.3d at 743–44. Exigent circumstances exist when there is some danger to the officer or the victim. Based on the information known to Officer

Quillin at the time and the circumstances, Officer Quillin had reason to believe that appellant (1) had been drinking and was intoxicated; (2) had kicked in the door to a bedroom to get his car keys; (3) had struck his pregnant wife on the head before driving from his residence; (4) had returned to the house shortly after the assault; and (5) posed a continuing physical threat to his pregnant wife. Further, when the officer attempted to make contact with appellant and his request to speak with appellant was disregarded, the officer had reason to believe that appellant might become angry with his wife for having called the police and physically attack his wife again.

We conclude sufficient exigent circumstances existed to warrant Officer Quillin's limited warrantless intrusion into appellant's garage to arrest him. Also, we conclude Officer Quillin had sufficient probable cause to arrest appellant. Officer Quillin had a "need to act quickly" under the facts presented in order to prevent appellant from engaging in any further violent attacks upon his pregnant wife. *See U.S. v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). The officer's actions clearly eliminated the risk of danger to the victim. Accordingly, we conclude that Officer Quillin's actions, even assuming an arrest of appellant, did not violate appellant's constitutional rights.

## IV. STATUTORY AUTHORIZATION TO ARREST

As an additional basis for his argument of trial court error, appellant contends Officer Quillin had no statutory authority to enter appellant's garage and arrest him.

While acknowledging the applicability of article 14.03(a)(4), appellant argues Officer Quillin could not arrest him absent probable cause to believe appellant "may cause further bodily injury" under article 14.03(a)(2).

### a) applicable law

In Texas, the limited circumstances where warrantless arrests are permitted are exclusively authorized by statute. A peace officer may arrest without a warrant under article 14.03(a)(4) of the Texas Code of Criminal Procedure if the officer has probable cause to believe the following: (1) the suspect has committed an assault; (2) the victim of the assault is a member of the suspect's family or household; and (3) the assault resulted in bodily injury to the victim. Tex.Code Crim. Proc. Ann. art. 14.03(a)(4) (Vernon Supp. 2004–05). This provision appears to be aimed at domestic violence situations, where an immediate arrest would be valuable in defusing the situation. 40 Dix & Dawson, § 9.83.

 A warrantless arrest pursuant to article 14.03(a)(4) of the Texas Code of Criminal Procedure requires that the assault resulted in bodily injury to the victim. However, unlike article 14.03(a)(2), it does not require probable cause to believe there is a danger of further bodily injury to the assault victim.[6] *See Jackson v. State,* 33 S.W.3d 828, 831–32 (Tex.Crim. App.2000) (warrantless arrest was permissible under article 14.03(a)(4) where appellant was related to the murder victims). Section 1.07(a)(8) of the Texas Penal Code defines bodily injury as "physical pain, ill-

---

6. Contrary to appellant's arguments, Officer Quillin did not need to have probable cause to believe that appellant would cause further bodily injury to his wife. Appellant erroneously relies upon article 14.03(a)(2), which requires that an officer have probable cause to believe that an assault has been committed and that there is a danger of further bodily injury to the victim. Tex.Code Crim. Proc. Ann. art. 14.03(a)(2). Article 14.03(a)(2) does not apply in this case.

ness, or any impairment of physical condition." TEX. PEN.CODE ANN. § 1.07(a)(8) (Vernon Supp. 2004–05). The terms "physical pain," "illness," and "impairment of physical condition" are terms of common usage, and are not so vague that men of common intelligence must guess at their meaning and differ in their application. *E.g.*, *Ramirez v. State*, 518 S.W.2d 546, 547–48 (Tex.Crim.App.1975). A fact finder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it. *See Wawrykow v. State*, 866 S.W.2d 96, 99 (Tex.App.-Beaumont 1993, pet. ref'd); *Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.-Corpus Christi 1988, pet. ref'd).

**b) application of the law to the facts**

■■ In order for Officer Quillin's actions to be valid in this case, he had to have probable cause to believe appellant committed an assault against a family member that resulted in bodily injury. TEX.CODE CRIM. PROC. ANN. arts. 14.01(b), 14.03(a)(4) (Vernon 1977 & Supp. 2004–05). To have probable cause to believe that an offense had been committed, Officer Quillin did not need first-hand knowledge of appellant's alleged assault of his wife. *See Astran*, 799 S.W.2d at 763.

The record shows that Officer Quillin had Ms. Randolph's oral and written statements that appellant hit her on the back of the head to force her to relinquish the keys to his car. Because she purported to be a crime victim, Officer Quillin was permitted to presume Ms. Randolph's statements were reliable, as long as he remained alert to the existence of any circumstances that would make that presumption inoperative. *See Mungia v. State*, 911 S.W.2d 164, 167 (Tex.App.-Corpus Christi 1995, no pet.). Accordingly, the trial court, as fact finder, could infer

that Ms. Randolph suffered bodily injury because she felt physical pain when appellant hit her on the back of the head. *See Ramirez*, 518 S.W.2d at 547–48; *Wawrykow*, 866 S.W.2d at 99; *Goodin*, 750 S.W.2d at 859.

We conclude that Officer Quillin had probable cause to believe appellant had committed an assault against a family member resulting in bodily injury. Therefore, the officer was statutorily authorized to arrest appellant.

**V. CONCLUSION**

Appellant's first and second issues on appeal are decided against him. The trial court's judgment is affirmed. TEX.R.APP. P. 43.2(a).