COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EMILIO MACIAS, | § | |
| Appellant, | § | No. 08-08-00178-CR |
| | § | Appeal from the |
| v. | § | County Court at Law No. 4 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20060C15213) |
| | § | |

**O P I N I O N**

A jury found Emilio Macias, Appellant, guilty of assault causing bodily injury, and the trial court sentenced him to 365 days in jail, probated for 18 months. On appeal, Appellant challenges the legal and factual sufficiency of the evidence to support his conviction. We affirm.

**BACKGROUND**

On September 7, 2006, Yolanda Campos asked Appellant to cut the grass at her residence. When he arrived the following day, Yolanda, having just exited the shower, answered the door in her bathrobe. Yolanda told Appellant to wait outside until she dressed, and then she would help him rake the grass. As Yolanda closed the door, Appellant asked to use the bathroom. Although Yolanda was uncomfortable allowing Appellant into her house dressed only in a bathrobe, she let him inside since he was married to her second cousin and she has known him for 20 years.

While Appellant used the hall bathroom, Yolanda waited on the couch in the living room with her two-year-old son. When Appellant finished, he asked whether the backyard needed any work. Yolanda responded that it was flooded but allowed Appellant to go out the front door and around to the back of the house to view the backyard. Appellant, however, wanted to view the

backyard from a window inside the house. Consequently, Yolanda took him to her son's bedroom window.

As Yolanda opened the window blinds, Appellant, a much larger and stronger person than she, grabbed her by the shoulders "real hard," causing Yolanda to feel pain, and pulled her to him. Yolanda struggled to turn around, and when she did, Appellant forcefully grabbed her arms and pulled her to him. Again, Yolanda felt pain. Yolanda tried to push him away and demanded to be let go, but Appellant kept pulling her towards him, trying to kiss her. When Appellant let go of her arms, he grabbed her face, squeezing real hard and causing pain, and tried to kiss her again. Yolanda thought Appellant, a man she trusted, was going to rape her with her son in the next room. After fighting back, Appellant let go, and Yolanda ran outside.

Fearing Appellant would harm her son, Yolanda, instead of running to her neighbors for help, demanded from the street that he leave. Appellant, however, stood in the doorway, staring at her. After further demands to leave, Appellant started walking away, and Yolanda ran inside and locked the door. She called Appellant's wife, and then the police. Prior to the police's arrival, Appellant and his wife returned to Yolanda's residence. Appellant's wife was crying and wanted to talk. Appellant said nothing. Yolanda refused to speak to either of them, and the couple left.

When Officer John Valles arrived, he noticed that Yolanda had been crying and that she was still shaking. Valles observed redness on Yolanda's jaw and neck although the pictures he took did not show the redness very well. Yolanda had no redness or contusions on her shoulders. Yolanda told Valles that she felt pain during the assault.

Detective Oscar Gomez followed up on the assault case. He obtained statements from Yolanda and Appellant. Both statements were factually similar concerning the entry, the mode, the placing of the hands, and the way Appellant exited the house. Yolanda told Gomez that she felt pain

and discomfort during the assault, even though the black-and-white photographs did not depict any visible injuries. However, Gomez knew it was possible to feel pain without exhibiting a visible injury. After reviewing both parties' statements, Gomez presented the case to the district attorney, believing it to have met all of the elements of an assault offense.

At trial, Appellant's testimony suggested that as they were looking out the window, he touched Yolanda's shoulder on her back as he bent down to get a better view of the backyard. At that point, Yolanda, according to Appellant, went berserk and demanded that he leave. Appellant's wife also testified at trial. She alleged that Yolanda was dishonest and often fought with her brothers, sister, mother, and husband. She claimed that when Yolanda called her, Yolanda only stated that Appellant tried to kiss her and that nothing else happened.

## DISCUSSION

Appellant's first issue contends that the evidence was legally insufficient to show a bodily injury, and his second complains of the same under a factual-sufficiency analysis. We disagree.

### Standard of Review

In a legal-sufficiency analysis, we consider all the evidence in a light most favorable to the verdict and determine whether a rational juror could have found the essential elements proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In so doing, we afford due deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13. Indeed, the trier of fact, not the appellate court, is free to accept or reject all or any portion of a witness's testimony. *Belton v. State*, 900 S.W.2d 886, 897 (Tex. App.–El Paso 1995, pet. ref'd). Our only duty is to determine whether both the explicit and implicit findings of the trier

of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State*, 828 S.W.2d 418, 421-22 (Tex. Crim. App. 1992). Thus, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991) (quoting *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)).

In a factual-sufficiency analysis, all the evidence is considered in a neutral light, and we will only find the evidence insufficient if: (1) the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust; or (2) the evidence supporting the verdict is outweighed by the great weight and preponderance of contrary evidence, rendering the verdict clearly wrong and manifestly unjust. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). However, we cannot reverse a conviction under the "clearly wrong" or "manifestly unjust" standards simply because, based on the quantum of evidence admitted, we would have voted to acquit. *Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Nor may we declare, based on a conflict in the evidence, that a new trial is justified simply because we disagree with the jury's resolution of that conflict. *Id.* Rather, a new trial will only be granted when we determine, on an objective basis, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* Accordingly, our review should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *see also Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

Under either standard, we consider all of the evidence, whether admissible or inadmissible. *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006); *Marshall*, 210 S.W.3d at 625. Further, we employ a hypothetically-correct jury charge analysis to evaluate the evidence under both standards. *Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). As applicable to this case,

therefore, it was the responsibility of the State to prove that (1) Appellant (2) intentionally, knowingly, or recklessly (3) caused (4) bodily injury (5) to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp. 2009). The Texas Penal Code defines bodily injury as physical pain, illness, or any impairment of physical condition. TEX. PENAL CODE ANN. § 1.07(a)(8) (Vernon Supp. 2009). Such definition has been held to be broad and to encompass even relatively minor physical contacts, so long as the contact was more than just offensive touching. *See Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989); *Arzaga v. State*, 86 S.W.3d 767, 778-79 (Tex. App.–El Paso 2002, no pet.).

*Analysis*

Appellant's sufficiency challenges solely focus on the bodily-injury component of the assault charge. Therein, he argues that the evidence was insufficient to show bodily injury, that is, that Yolanda suffered any pain. To support his argument, Appellant points out that Yolanda was wearing a thick, heavy bathrobe, which he concludes absorbed any pain Yolanda may have felt when he touched her, that Yolanda, by calling his wife, rather than the police, first, and by refusing treatment at a hospital, further shows that she did not experiencing any pain, and that Officer Valles found no "strong" injuries, nor did the pictures taken show any injuries.

We first address the bathrobe defense. Although Yolanda wore a thick, heavy bathrobe during the assault, she unequivocally testified that Appellant caused her pain when he grabbed her shoulders "real hard" and when he "forcefully" grabbed her arms. Yolanda's testimony was further supported by Officer Valles and Detective Gomez, who both testified that Yolanda had told them she felt pain when Appellant grabbed her. A victim's testimony that she suffered pain is alone sufficient to satisfy the requirement of physical pain. *See Lane*, 763 S.W.2d at 786-87; *Lewis v. State*, 530 S.W.2d 117, 118 (Tex. Crim. App. 1975). Thus, the jury was entitled to reject Appellant's

defense and to believe Yolanda's assertion that she felt pain despite wearing the thick, heavy bathrobe.

Moreover, the information and jury charge alleged that Appellant intentionally, knowingly, or recklessly caused bodily injury to Yolanda by grabbing her face or body. Even if the jury believed that Yolanda's bathrobe may have absorbed any pain Appellant caused when he grabbed her arms, the bathrobe was not covering Yolanda's face when Appellant grabbed her face and "squeezed" it. Not only was Yolanda's testimony that she felt pain in this instance sufficient, but the jury could have inferred that Yolanda actually felt or suffered physical pain when Appellant grabbed and squeezed her uncovered face. *Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.–Dallas 2004, no pet.); *Wawrykow v. State*, 866 S.W.2d 87, 89 (Tex. App.–Beaumont 1993, pet. ref'd); *Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.–Corpus Christi 1988, pet. ref'd) (jurors, as people of common intelligence, understand pain and some of the natural causes of it). Such was sufficient to support the bodily-injury element of assault.

Appellant also asserts that Yolanda did not experience any pain since she contacted Appellant's wife, rather than the police, immediately after the assault occurred, and that she declined to seek treatment at a hospital. Yolanda, however, testified that she did not call the police first because she was stressed, crying, and in shock. She also stated that she did not need to go to the hospital as she could not afford any more medical bills. The jury, as the sole judge of the credibility of the witnesses, was entitled to believe Yolanda's explanations. *See Pierson v. State*, No. 14-06-00044-CR, 2007 WL 412357, at *4 (Tex. App.–Houston [14th Dist.] Feb. 8, 2007, no pet.) (mem. op., not designated for publication) (deferring to jury's finding that complainant suffered bodily injury even though the contrary evidence was that complainant refused medical treatment and there was no testimony from the complainant regarding the issue of pain or any photographs depicting an

injury).

Appellant further asserts that Officer Valles found no strong injuries and that the pictures did not show any injuries. However, there is no requirement that bodily injury requires a showing of a *strong* injury. As noted above, bodily injury encompasses even relatively minor physical contacts, so long as they are more than offensive touching. *See Lane*, 763 S.W.2d at 786; *Arzaga*, 86 S.W.3d at 778-79. Here, being grabbed "forcefully" and "real hard," and trying to get away while at the same time fending off the kiss of a man married to another is more than just offensive touching. Further, although the pictures may not have shown any bodily injuries, Officer Valles testified that he observed redness on Yolanda's jaw and neck area. The visible redness on Yolanda's jaw and neck area in conjunction with Yolanda's statements that she felt pain was sufficient to establish the bodily-injury element.[1]

This case, in essence, concerned a swearing match. Yolanda testified that Appellant grabbed her shoulders, arms, and face, causing her pain, and Appellant testified that he merely touched her back as he bent down to look out the window. It was within the jury's exclusive province to evaluate the credibility and demeanor of the witnesses and choose who to believe. *See Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). As an appellate court faced with a cold record, we will not substitute our judgment for that of the fact finder. *Id.* After reviewing the entire record, we find that the jury could have reasonably found sufficient evidence to show Appellant caused a bodily injury, and thus, we hold the evidence legally sufficient. *See Jackson*, 443 U.S. at 318-19. Further,

_____

[1] Appellant suggests that since the redness was observed on Yolanda's neck, there was a variance between the information, which alleged he grabbed her face, and the proof at trial. However, Officer Valles found redness on Yolanda's right jaw and neck area. The jaw is part of the face. *See* Webster's New Universal Unabridged Dictionary 1025 (2003) (defining the jaw as the bones forming the framework of the mouth); *see* Webster's at 689 (defining face as the front part of the head from the forehead to the chin). Further, the information also alleged Appellant grabbed Yolanda's body, and the body certainly encompasses the neck. *See* Webster's at 232 (defining body as the physical structure of a human being or the physical person of an individual). Thus, we find no variance between the information and the proof at trial.

because the evidence supporting the verdict is not so weak, nor is it outweighed by the great weight and preponderance of contrary evidence, that the verdict is clearly wrong or manifestly unjust, we find the evidence factually sufficient to support Appellant's conviction. *See Roberts*, 220 S.W.3d at 524. Accordingly, we overrule Appellant's first and second issues presented for review.

## CONCLUSION

Having overruled Appellant's two issues, we affirm the trial court's judgment.


GUADALUPE RIVERA, Justice

March 24, 2010

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)