**Opinion filed July 28, 2016**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00290-CR

_____

## JONATHAN SANCHEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 11110-D**

## M E M O R A N D U M   O P I N I O N

The jury found Jonathan Sanchez guilty of the third-degree felony of evading arrest.[1] The trial court assessed punishment at confinement for five years and a fine of $500, but the trial court suspended the imposition of the sentence and placed

---

[1]A person commits the offense of evading arrest if he "intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A) (West Supp. 2015).

Appellant on community supervision for five years. In a single issue, Appellant asserts that the trial court erred when it denied his motion to suppress evidence from police about what Appellant wore and looked like when he was arrested and what Appellant told them. We affirm.

## I. *Evidence at Hearing*

Appellant filed a motion to suppress, and the trial court conducted a pretrial hearing on the motion. The record from the hearing shows that, early in the morning on the date of the offense, Appellant visited Elizabeth Lujan, his girlfriend. The two had an argument in Lujan's front yard, and Appellant got a crowbar from his black Dodge pickup and broke the windows of Lujan's vehicle. Both Lujan and Appellant were intoxicated. Lujan's mother called the Abilene Police Department, and Appellant fled in his pickup. Kurt Thomas, an Abilene police officer, responded to the call and interviewed Lujan at her home.

After Appellant fled from Lujan's front yard and drove away in his pickup, Daniel White, a trooper with the Texas Department of Public Safety, saw him disregard a stop sign, drive to the left of a traffic island, and strike the curb of the traffic island. Trooper White initiated a traffic stop; however, as he approached Appellant's pickup, Appellant sped away. When Trooper White initiated the stop he had a prisoner in his patrol vehicle and was en route to the jail with that prisoner. The Department of Public Safety does not permit officers to pursue a suspect if they have a prisoner in the vehicle. Consequently, Trooper White followed Appellant briefly but ultimately called for an "assist" from Abilene police.

Jeremiah Torrez, an Abilene police officer, received the call to assist Trooper White at around 2:56 a.m. Dispatch informed Officer Torrez that Trooper White was in pursuit of a person evading arrest. The Department of Public Safety dispatcher conveyed Appellant's license plate number. That number had already been linked to a 9-1-1 call because of Lujan's complaint of criminal mischief to

2

Officer Thomas. Officer Torrez proceeded to the address associated with Appellant's license plate. When he arrived at the address, he observed that "there was still dirt and debris flying," and he "could see the [black Dodge pickup] through an open gate right behind [Appellant's] residence, still smoking and . . . burning up because it was hot from a pursuit."[2]

Appellant's entire backyard was enclosed by a fence. The fence had a gate, but the gate appeared to have been knocked down recently.[3] Officer Torrez hypothesized that it had been knocked down by Appellant as Appellant had entered the property and "power-slid" into the backyard. Officer Torrez believed that Appellant had just arrived. Officer Torrez entered the property through the open gate and cleared the backyard at gunpoint to ensure that "nobody was hanging out." He then took a tactical position on the backside of Appellant's house and notified other officers that he had located Appellant's pickup.

Meanwhile, Lujan told Officer Thomas—who had remained at Lujan's residence to ensure that Appellant did not return to harm her or her property—that she had spoken to Appellant by phone and that Appellant had threatened to "cut his throat." Lujan told Officer Thomas that, before Appellant hung up, she heard him scream and make a gurgling sound and also heard a loud thumping sound like he had hit the floor. Lujan was "very distraught"; Officer Thomas believed her and used his radio to report to other officers what she had told him.

Officer Torrez, while standing next to Appellant's house, heard Appellant yell, "You don't think I'll do this; I'll show you." Officer Torrez then received Officer Thomas's message that Appellant had just threatened to kill himself. Appellant continued to make threats until Officer Torrez heard a "loud gurgling

---

[2]Officer Torrez thought Appellant's vehicle had overheated or "blown" from the strain put on the vehicle during the pursuit.

[3]Officer Torrez had seen Appellant's house previously with the gate standing upright and closed.

noise and then . . . a loud crash." Officer Torrez then received another radio message from Officer Thomas, who reported, "I think he -- she said he cut his throat." Officer Torrez and other officers then entered Appellant's house and arrested him. After Appellant was in custody, Officer Thomas reported that Appellant once again contacted Lujan and this time told Lujan that he had not killed himself.

Officer Torrez testified that he entered the backyard because he was "pursuing the evading." Officer Torrez testified that he entered the house as an "exigent circumstance of the emergency doctrine" because he "believed that [Appellant] had slit his throat."

In his motion to suppress, Appellant sought to suppress "all of the interactions of [Abilene Police] entering the premises . . . not just the arrest itself, but all the surrounding events, statements, descriptions of things seen within the residence, [and] identification of him in the residence." The trial court denied Appellant's motion to suppress.

## II. *Analysis*

In a single issue, Appellant contends that the trial court erred when it denied his motion to suppress because officers did not have a warrant or an applicable warrant exception that permitted them to enter his yard and, later, his home. He argues that the State is incorrect in its assertion that officers entered his yard under the doctrine of "hot pursuit" and his house under exigent circumstances.

In those situations where no findings of fact or conclusions of law in support of the trial court's ruling on a motion to suppress are either requested or made, "we must presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling." *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). When we review the trial court's ruling, we will accord the court's implied findings "almost total deference" if its determinations are supported by the record. *See State v. Woodard*, 341 S.W.3d 404,

4

410 (Tex. Crim. App. 2011). We view the evidence in the light most favorable to the trial court's ruling and will afford its ruling "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *Id.* (quoting *State v. Garcia Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). The trial court is the sole judge of the credibility of the witnesses and "may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (citations omitted). When no findings of fact are made, we assume the trial court made implicit findings of fact that support its ruling, so long as such implicit findings are supported by the record. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).

Even if we assume, without deciding, that Appellant is correct and the police were not in hot pursuit, the police were, as we explain below, authorized to enter his home under the doctrine of exigent circumstances for an emergency situation. As a result, the information about what Appellant wore, what he looked like, and what he said to police officers in his home was not the "fruit of the poisonous tree" because the information that led to the entry of his home came from an independent source.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. For purposes of the Fourth Amendment, a "search" occurs when the government violates a subjective expectation of privacy that society deems objectively reasonable. *See Kyllo v. United States*, 533 U.S. 27, 33 (2001). The entry into a residence by officers is a search for purposes of the Fourth Amendment. *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010); *see also Spring v. State*, 626 S.W.2d 37, 41 (Tex. Crim. App. [Panel Op.] 1981). Thus, absent an exception to the warrant requirement, such as exigent circumstances, police may not enter the residence of a suspect without first obtaining a warrant. U.S. CONST.

amend. IV; *Valtierra*, 310 S.W.3d at 448; *see also Waugh v. State*, 51 S.W.3d 714, 718 (Tex. App.—Eastland 2001, no pet.).

The "fruit of the poisonous tree" doctrine serves to exclude from evidence both direct and indirect products of Fourth Amendment violations. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963); *State v. Iduarte*, 268 S.W.3d 544, 550 (Tex. Crim. App. 2008). But there are exceptions to this doctrine. One exception is the "independent source" doctrine, which provides that evidence obtained with or without a warrant is not subject to suppression if the prior unlawful action does not contribute in any way to the discovery of the evidence. *Wehrenberg v. State*, 416 S.W.3d 458, 469 (Tex. Crim. App. 2013). "Because the independent source doctrine is applicable only to situations in which there is no causal link between the illegal conduct and the discovery or seizure of evidence, application of that doctrine is entirely consistent with the statutory exclusionary rule's requirement that evidence 'obtained' in violation of the law is subject to suppression." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005); *State v. Daugherty*, 931 S.W.2d 268, 270–71 (Tex. Crim. App. 1996) (examining plain language of Article 38.23)); *Johnson v. State*, 871 S.W.2d 744, 750–51 (Tex. Crim. App. 1994) (holding that federal attenuation doctrine is consistent with Article 38.23 because "evidence sufficiently attenuated from the violation of the law is not considered to be 'obtained' therefrom"); *see also Segura v. United States*, 468 U.S. 796, 814–15 (1984) (discussing absence of causal link in situations involving independent source).

To determine whether "evidence is admissible under the independent source doctrine, the central question is 'whether the evidence at issue was obtained by independent legal means.'" *Wehrenberg*, 416 S.W.3d at 465 (quoting *United States v. May*, 214 F.3d 900, 906 (7th Cir. 2000)). In short, there must not be any causal connection between the offending officer's illegal action and the independent discovery of evidence. *See id.* at 470. Even if Officer Torrez had improperly entered

6

Appellant's yard, Lujan was, nonetheless, an independent source when she told Officer Thomas that Appellant had called her and immediately threatened to kill himself. The information she provided was sufficient to trigger an exigent-circumstance exception to the warrant requirement.[4] She was not acting as an agent of the state or affected by any improper state action. Further, her statements were wholly independent of Officer Torrez's actions and those statements were an independent source. *See Wehrenberg*, 416 S.W.3d at 469.

Emergencies permit officers to make warrantless entries and searches when they have reason to believe that a person is in need of immediate aid. *Winslow v. State*, 742 S.W.2d 801, 804 (Tex. App.—Corpus Christi 1987, pet. ref'd) (citing *Mincey v. Arizona*, 437 U.S. 385, 392 (1978)). The burden of proof is on the State to show that the warrantless entry was justified by an emergency. *Winslow*, 742 S.W.2d at 804 (citing *Janicek v. State*, 634 S.W.2d 687, 691 (Tex. Crim. App. 1982)). The reasonableness of the emergency entry is to be judged by the circumstances that existed at the time the decision was made to enter. *Id.* (citing *Janicek*, 634 S.W.2d at 691). We use an objective standard of reasonableness when we assess an officer's belief that a warrantless entry was justified by an immediate emergency. *Id.* at 804–05 (citing *Bray v. State*, 597 S.W.2d 763, 765 (Tex. Crim. App. 1980)).

Lujan told Officer Thomas that Appellant had threatened to kill himself, and before he hung up, she heard him scream, heard him make a gurgling sound, and heard a loud thumping sound like he had hit the floor. Officer Thomas reported this

---

[4]The State argues on appeal that the entry into Appellant's residence was permissible under the community-caretaking exception to the Fourth Amendment. Under this exception, officers may "*stop and assist* an individual whom a reasonable person—given the totality of the circumstances—would believe is in need of help." *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999) (emphasis added). The community-caretaking exception, however, has narrow applicability. *Id.* at 152. Here, Appellant's suicidal threats triggered an emergency situation, which is an exigent circumstance. *See Welmaker v. State*, 941 S.W.2d 241, 243 (Tex. App.—Corpus Christi 1996, pet. ref'd).

conversation over the radio; Officer Torrez received Officer Thomas's message as well as another radio message from Officer Thomas stating, "I think he -- she said he cut his throat." This information was independent of what Officer Torrez heard while in the backyard, and that independent information indicated that an emergency existed that constituted exigent circumstances and warranted police entry into Appellant's house. *See Welmaker*, 941 S.W.2d at 243 (emergency justified warrantless entry of hotel room). We hold that the trial court's ruling is supported by the record and that it did not err when it denied Appellant's motion to suppress. *See Wehrenberg*, 416 S.W.3d at 469; *Welmaker*, 941 S.W.2d at 243. We overrule Appellant's sole issue on appeal.

III. <em>This Court's Ruling</em>

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

July 28, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.