**AFFIRMED; Opinion Filed June 10, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01124-CR

### JAIME FALFAN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F-1271690-X**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Brown
Opinion by Justice Myers

Jaime Falfan appeals his conviction for indecency with a child by contact. After the jury

found appellant guilty, the trial court assessed appellant's punishment at four years'

imprisonment. Appellant brings two issues contending (1) the trial court erred by permitting

evidence of appellant's oral statements to a police officer when appellant had not been

admonished as required by article 38.22 of the Texas Code of Criminal Procedure; and (2) the

prosecutor made an impermissible jury argument. We affirm the trial court's judgment.

### BACKGROUND

In 2012, the complainant's mother, Gloria Cuellar, was in a relationship with appellant, a

mechanic. On Saturday night, June 30, 2012, appellant telephoned Cuellar and said he wanted to

talk with her. At that time, the complainant, a ten-year-old girl, was asleep on the bed in

Cuellar's home. Cuellar drove to appellant's workshop and brought him back to her home. As

they sat on the couch talking, the complainant awoke, got up, and sat on the couch next to appellant. The complainant was wearing only her underwear but had a blanket covering the front part of her body. As she sat there, appellant slipped his hand behind her under her underwear and touched her buttocks. Cuellar then said it was time for them to go to bed. The complainant lay down on one side of the bed, her mother was in the middle, and appellant was on the other side of the bed. Appellant and Cuellar lay in bed talking, and then appellant told the complainant to get between them so he could talk to her. The complainant did so, and as she lay next to appellant, he took her hand and placed it on his penis and held it there. Cuellar noticed the complainant was uncomfortable and told her to move back to the side of the bed next to her. The next morning, the complainant got up and put on a dress to go to church, and Cuellar went in the bathroom to take a bath. While Cuellar was in the bathroom, appellant got up, walked over to the complainant, lifted up the front of her dress, put his hand under the front of her underwear, and touched her genitals. After Cuellar took appellant back to his shop, the complainant told Cuellar what appellant had done to her.

The next day, Cuellar took the complainant to the hospital and told the hospital personnel what the complainant had told her. The hospital personnel notified the policeman on duty at the hospital. The complainant was taken to the Dallas Children's Advocacy Center where she was forensically interviewed and related the details of the offense.

A Dallas police detective, Glenn Slade, spoke to appellant, and appellant told him he was drinking beer with Cuellar on the night of June 30 in front of Cuellar's house but that he never went into the house.

In his defense, appellant presented five alibi witnesses who testified that on June 30 to July 1, 2012, appellant was at a birthday party for appellant's brother from four or five o'clock in the afternoon and that the party went on with appellant there until four o'clock in the morning.

They testified that appellant spent the night at his brother's house and that he did not leave until 8:30 or 9:00 or between 9:00 and 10:00 the next morning.

## ADMISSION OF ORAL STATEMENTS

In his first issue, appellant contends the trial court erred by admitting evidence of appellant's oral statements to Detective Slade when he had not been advised of his rights as required by article 38.22 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a) (West Supp. 2013). The State argues the admonishment requirement of article 38.22 did not apply because appellant was not in custody. *See* CRIM. PROC. art. 38.22, § 5. We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Randolph v. State*, 152 S.W.3d 764, 769 (Tex. App.—Dallas 2004, no pet.). This standard gives almost total deference to a trial court's determination of historical facts and applies a de novo review of the trial court's application of the law to those facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court is the sole trier of fact, the judge of witness credibility, and the determiner of the weight given to witness testimony. *Randolph*, 152 S.W.3d at 769. We must sustain a trial court's decision to overrule a motion to suppress if the decision is supported by the record and is correct under any theory of law applicable to the case. *See Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

Article 38.22 of the Texas Code of Criminal Procedure provides that "[n]o oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless" the accused is warned of his rights[1] during

---

[1] Those rights are that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

the recording but before making the statement, "and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning." CRIM. PROC. art. 38.22, § 2(a). Article 38.22 does not preclude the admission of statements that do not stem from custodial interrogation. CRIM. PROC. art. 38.22, § 5.

A person is in custody for purposes of article 38.22 if there was a formal arrest or "restraint of freedom of movement to the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam) (internal quotation mark omitted); *see State v. Saenz*, 411 S.W.3d 488, 496 (Tex. Crim. App. 2013); *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). The determination of custody is made on an ad hoc basis after considering all of the objective circumstances. *Dowthitt*, 931 S.W.2d at 255.

The court of criminal appeals has outlined four general situations that may constitute custody:

> (1) when the suspect is physically deprived of his freedom of action in any significant way,
>
> (2) when a law enforcement officer tells the suspect that he cannot leave,
>
> (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and
>
> (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Saenz*, 411 S.W.3d at 496 (quoting *Dowthitt*, 931 S.W.2d at 255). The first three situations require that the restriction on a suspect's freedom of movement must reach "the degree associated with an arrest" instead of an investigative detention. *Id.* The fourth situation requires that the officer's knowledge of probable cause be manifested to the suspect. *Id.*; *see Stansbury v.*

---

(5) he has the right to terminate the interview at any time.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a)

*California*, 511 U.S. 318, 324–25 (1994) (officer's subjective thoughts are irrelevant to custody determination unless they are communicated to the suspect). Custody is not established in the fourth situation "unless the manifestation of probable cause 'combined with other circumstances' of the interview, such as the duration or factors of 'the exercise of police control over [a suspect],' would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Saenz*, 411 S.W.3d at 496 (quoting *Dowthitt*, 931 S.W.2d at 255–57).

The trial court held a hearing outside the presence of the jury to determine the admissibility of appellant's oral statements. Dallas Police Department Detective Glenn Slade testified that before speaking to appellant, he viewed the forensic interview of the complainant and spoke to Cuellar. On July 4 or 5, 2012, Slade, together with Child Protective Services Investigator Ruben Villegas, went to appellant's shop to talk to appellant. Slade told appellant he was investigating the case and that appellant was not under arrest. Slade asked appellant where he was on June 30. Appellant told Slade that Cuellar came to his shop that night, they drank some beer, and then they went to her house. Appellant said he never went inside the house that night but sat in Cuellar's car in front of her house talking and drinking beer. Appellant said Cuellar invited him inside the house but that he refused and went home. During the hearing, the trial court asked Slade if appellant knew he did not have to talk to Slade, and Slade said "Yes."

Appellant argued to the trial court that Slade had sufficient information before he talked to appellant to know that appellant was a suspect, "therefore, as a suspect in an offense he deserved a 38.22 warning." The trial court ruled the statements were admissible because "they did not stem from custodial interrogation." Slade then testified before the jury to the facts he testified to during the hearing outside the presence of the jury.

On appeal, appellant argues he was in custody when speaking to Slade because Slade had probable cause to arrest appellant. However, the record of the hearing before the trial court

contains no evidence that Slade manifested any knowledge of probable cause to appellant. Nor is there any evidence of the length of Slade's interview with appellant. Instead, the evidence shows Slade told appellant he was not under arrest and that Slade was still investigating the case. The evidence also shows appellant knew he did not have to talk to Slade.

Appellant cites two cases in support of his argument, *Randall v. Estelle*, 492 F.2d 118 (5th Cir. 1974), and *McCrory v. State*, 643 S.W.2d 725 (Tex. Crim. App. 1982). In *Randall*, two Dallas police officers investigating a possible homicide discovered Randall crouched over the dead body of his wife. *Id.* at 119. They placed Randall in a police car and interrogated him for ten to fifteen minutes without giving him *Miranda* warnings,[2] and Randall told them the location of the murder weapon. A police detective then arrived, was informed of the above information, and before speaking to appellant, he formed the opinion that Randall was "the likely culprit." *Id.* The detective then questioned Randall in the police car, and Randall admitted he had killed his wife. Only then did the detective inform Randall of his *Miranda* rights. *Id.* The officers took appellant to the police station where Randall signed a written confession. *Id.* The Fifth Circuit determined that Randall's oral confession "resulted from custodial interrogation . . . rather than from inherently noncoercive, on-the-scene questioning." *Id.* at 120. The court concluded Randall was in custody because the paramount factor the Fifth Circuit considered in determining whether an interrogation was custodial was "whether the investigation has focused on the defendant at the time of interrogation." *Id.* The court concluded that "[t]he facts of this case plainly show that Randall was the focal point of an intensive interrogation by three police officers in the distinctly unfamiliar environs of a police car." *Id.* Twenty years after *Randall*, the Supreme Court rejected the argument that a suspect's being the focus of an investigation was a factor in determining whether the suspect was in custody at the time of the interrogation. *See*

---

[2] *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

*Stansbury*, 511 U.S. at 326 ("[A]ny inquiry into whether the interrogating officers have focused their suspicions upon the individual being questioned (assuming those suspicions remain undisclosed) is not relevant for purposes of *Miranda*."). We conclude this portion of *Randall* was no longer correct after the Supreme Court's opinion in *Stansbury*.

In *McCrory v. State*, the police found the body of a teenaged girl who had been raped and murdered near her car. *McCrory*, 643 S.W.2d at 727. That same day, McCrory told the police that his fingerprints would be found on the victim's car. An officer encouraged McCrory to take a polygraph test, and he agreed. The polygraph examiner shared a suite of offices with a psychiatrist. *Id.* After reviewing the polygraph, the examiner told McCrory that the exam indicated deception. *Id.* at 728. The examiner explained to McCrory the reasons why the test might indicate deception, and he told McCrory that a psychiatrist was available. The examiner then questioned McCrory in a manner that encouraged McCrory to admit he killed the victim. *Id.* Eventually, McCrory told the examiner "I did it," and he asked to speak to the officer and the psychiatrist. *Id.* at 729 (emphasis omitted). The officer (who had been watching through a one-way mirror), entered the laboratory, and McCrory told him "he had done it, he had killed her." *Id.* The psychiatrist entered the polygraph room and told McCrory he was there as a physician to help him and that McCrory did not have to talk to him if he did not want to. *Id.* at 730. McCrory then told the psychiatrist what had happened, relating how he raped and murdered the victim. *Id.* at 731 & n.10. The officer reduced McCrory's statement to the psychiatrist to writing, and McCrory signed the statement. *Id.* At no point was McCrory admonished of his rights under *Miranda* and article 38.22. *Id.* The trial court excluded the written statement but admitted evidence of McCrory's oral statement to the psychiatrist. *Id.* The court of criminal appeals concluded the trial court erred by admitting evidence of the oral statement to the psychiatrist because McCrory was in custody at the time. *Id.* at 734–35. The court explained that McCrory

–7–

was in custody from the time he admitted to the polygraph examiner that he had murdered the victim because at that point McCrory would not have been allowed to leave. *Id.* at 733.[3] The court also stated that the record would support the conclusion that McCrory was in custody from the time the polygraph examiner told McCrory he believed McCrory had killed the victim. *Id.* In this case, however, appellant never admitted his guilt, and Slade never told appellant he believed appellant had molested the complainant. Thus, the court's reasoning in *McCrory* is not applicable to the case before us.

We conclude the trial court correctly determined appellant was not in custody when he talked to Slade and that the trial court did not err by overruling appellant's objection and admitting evidence of appellant's oral statement to Slade. We overrule appellant's first issue.

## JURY ARGUMENT

In his second issue, appellant contends the prosecutor made an impermissible jury argument. The four general areas of proper jury argument are summation of the evidence, reasonable deductions from the evidence, answers to the argument of opposing counsel, and pleas for law enforcement. *Rocha v. State*, 16 S.W.3d 1, 21 (Tex. Crim. App. 2000); *Kirvin v. State*, 394 S.W.3d 550, 560 (Tex. App.—Dallas 2011, no pet.). Attorneys are allowed wide latitude in drawing inferences from the evidence, but the inferences must be "reasonable, fair, legitimate, and offered in good faith." *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996); *see Lair v. State*, 265 S.W.3d 580, 592 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (quoting *Shannon*). When a jury argument improperly refers to matters outside the record, an

---

[3] The court stated,

> Indeed, it strains credulity to suggest appellant himself thought he could admit commission of this capital murder to Baker, shake hands around, glance at his watch as he informed the group he was late for another appointment, and walk out the door! No doubt appellant assessed the situation exactly as did [the sheriff's officer]: once he had admitted the crime, he was no longer free to leave.

*McCrory*, 643 S.W.2d at 733.

instruction to the jury to disregard the argument cures any error "unless the argument is manifestly improper or so extreme that an instruction will not cure the error." *Ransom v. State*, 920 S.W.2d 288, 303 (Tex. Crim. App. 1994). Improper arguments are not reversible "unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). To warrant reversal, "the remarks must have been a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Id.* However, "[b]efore a defendant will be permitted to complain on appeal about an erroneous jury argument or that an instruction to disregard could not have cured an erroneous jury argument, he will have to show he objected and pursued his objection to an adverse ruling." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *see Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004) (reaffirming *Cockrell*: "*Cockrell* remains the law. Because appellant failed to object to the jury argument [that it was outside the record], he has forfeited his right to raise the issue on appeal.").

In the jury argument, the prosecutor discussed all the times the complainant had to explain the sexual abuse appellant inflicted on her to medical personnel, investigators, and therapists, and he compared the credibility of her testimony to that of appellant's alibi witnesses, who never went to the authorities with their information about appellant's location and activities on the night in question until the trial. He then compared the alibi witnesses' testimony to that of Slade and Villegas, who had testified to appellant's oral statement about spending the night of June 30 talking to Cuellar in her car and then going home. The prosecutor told the jury,

> What did those men [Slade and Villegas] have to lose by coming in here and telling you what the defendant said? They certainly didn't make it up because they had a career on the line.
>
> [Appellant's Counsel]: Objection about any career on the line in their testimony, Your Honor.

–9–

The Court: Well, I will sustain the objection. The jury will recall the evidence they heard.

[Prosecutor]: They had everything to lose. Those family members [who testified to appellant's alibi], they have nothing to lose by telling you the story they told you. Simply asking that you use your collective conscience and your collective common sense. We are certain that that will lead you to a verdict of guilty.

Appellant acknowledges his counsel did not move for a mistrial, but he argues the prosecutor disregarded the ruling of the trial court by continuing with the same line of argument. Appellant "prays that such argument be viewed as fundamental error, incurable in that it was compounded by repetition." Appellant cites no authority in support of these arguments.

Appellant received all the relief he requested from the first objection because the trial court sustained his objection and sua sponte instructed the jury. "To preserve error in prosecutorial argument, a defendant must pursue to an adverse ruling his objections to jury argument." *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). Appellant failed to preserve any error for review because he did not pursue his objection to an adverse ruling. *See Kennedy v. State*, 255 S.W.3d 684, 690 (Tex. App.—Eastland 2008, no pet.). To the extent appellant argues the error from the prosecutor's continuing the same argument was "fundamental," by which it appears he means that it was not curable by an appropriate instruction to the jury to disregard, that error was not preserved for appellate review because appellant did not object to the continuation of the argument. *See Cockrell*, 933 S.W.2d at 89. Even if the error were preserved, the argument was not "extreme or manifestly improper, violative of a mandatory statute," and it did not "inject[] new facts harmful to the accused into the trial proceeding." *Wesbrook*, 29 S.W.3d at 115. The record does not show that the prosecutor's argument was "a willful and calculated effort to deprive appellant of a fair and impartial trial." *Id.* Accordingly, any error that may have been preserved was not reversible. We overrule appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers/

LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
131124F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JAIME FALFAN, Appellant

No. 05-13-01124-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 6, Dallas County, Texas
Trial Court Cause No. F-1271690-X.
Opinion delivered by Justice Myers.
Justices Lang and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 10th day of June, 2014.

/Lana Myers/
LANA MYERS
JUSTICE