**AFFIRMED; Opinion Filed December 20, 2018.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-17-01244-CR

**ERIC DENNIS BUNTON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court No. 11**
**Dallas County, Texas**
**Trial Court Cause No. M17-11986 N**

## MEMORANDUM OPINION

Before Justices Myers, Evans, and Brown
Opinion by Justice Evans

Appellant Eric Dennis Bunton appeals from the judgment adjudicating him guilty of family violence assault and his accompanying sentence of three hundred sixty-five days probated for twelve months and a $500 fine. Appellant contends that the evidence is legally insufficient for the jury to find that he was guilty of family violence assault. Appellant also contends that the trial court erred in denying his 401 and 403 objections to extraneous offence/bad act evidence. We affirm.

# BACKGROUND

Appellant was charged with the offense of family violence assault in violation of Texas Penal Code Section 22.01(a)(1).[1] There was also an allegation that appellant had a dating relationship with the complainant, Lindsey Prater. The jury charge instructed the jury, appellant was charged as follows:

> The defendant, ERIC BUNTON, stands charged by Information with the offense of assault, alleged to have been committed on or about the 20th day of March, 2017, in Dallas County, Texas, by intentionally or knowingly or recklessly cause [sic] bodily injury to LINDSEY NICOLE PRATER, BY GRABBING COMPLAINANT AND BY FORCING A PHONE AND A HAND AGAINST COMPLAINANT AND BY STRIKING COMPLAINANT WITH A HAND[.]

On March 20, 2017, appellant, Prater, and Makenzie Bancroft spent the day together at the lake. At trial, Bancroft testified regarding the events that followed. The three of them drank and spent time on appellant's boat for approximately five hours that day. Bancroft noted she had hung out with appellant and Prater on three occasions and that they argued a lot. Bancroft testified that although she was drinking that day, she did not drink enough to forget the events. On the evening of March 20th, appellant and Prater argued on the way home. Appellant and Prater were seated in the front seat of the truck and Bancroft was in the back seat. Appellant swerved and something hit the truck. Prater yelled at him to pull over and then got on her phone to relay what was happening to the person she called and the argument escalated from there. Bancroft testified Prater shoved appellant in the shoulder while he was driving and appellant kept trying to get Prater's phone. Bancroft further stated that appellant again reached over to get Prater's phone and when he grabbed it, he hit her on the cheekbone with a closed fist. Bancroft testified that they had to pull over because they had a flat tire. Appellant then got out of the truck, went to the passenger side, and opened the door and tried to grab the phone from Prater. Bancroft testified that after

---

[1] *See* TEX. PENAL CODE ANN. §22.01(a)(1) ("A person commits an offense if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse[.]").

appellant got Prater's phone, he smashed it on the concrete. Bancroft stated that Prater told her to grab her stuff and that they needed to go so they began walking. Bancroft testified that appellant was calling and texting Bancroft and that he threatened to send and post Prater's nude photographs online unless the two women returned. Prater used Bancroft's phone to call her dad, some of her friends and the police.

Officer Corey Brewer, a police officer with the Carrollton Police Department, testified that he was dispatched to a minor accident where a second party (Prater) had called in and said that they were involved in an accident and they fled the scene. Officer Brewer met up with Prater and Bancroft to get their information for a crash report. Officer Brewer testified that he noticed visible injuries on Prater that seemed more consistent with an assault than a traffic accident. Officer Brewer never spoke with appellant. Officer Brewer instructed another officer to photograph Prater including the scratches on her arm, a scratch on her neck, and some small abrasions and swelling to her left eye. Prater initially did not tell Officer Brewer anything about what happened but Bancroft told him what happened. Prater did not want to press charges and Officer Brewer described her behavior as fearful, shy, and timid. Officer Brewer also testified that after going back and forth between the two women, Prater did open up to him and her story was consistent with Bancroft's story. Brewer testified he believed the women had consumed alcohol but they were not intoxicated and their stories made sense.

Following Bancroft's and Officer Brewer's testimony, the State rested and appellant testified on his own behalf. Appellant testified that Prater and Bancroft drank alcohol at the lake but that he did not drink. The two or three times Bancroft had been out with them, appellant stated she drank to the point of blacking out and on the day of the incident she passed out in the back of his truck from drinking. Appellant stated the accident happened when he was in the far left lane where there were barriers and no shoulder due to construction. The barriers switched the lane and

when appellant changed lanes, his trailer was hit, he broke a wheel, and blew out his tire. The accident woke Bancroft up and while he missed the first exit, he pulled over at the second exit. Between the time of the accident and pulling over, appellant testified that Prater was shoving him and was upset because he was not pulling over fast enough. Appellant denied reaching for Prater's phone in the car, but admitted he grabbed her phone and threw it across the street after she kicked him in the face when he came around to the front passenger door and asked Prater to get off the phone. Appellant stated when he went to focus on the accident the two women walked off. He called Bancroft's phone to say that he did not want to leave them but appellant denied making any threats or sending any threatening text messages. According to appellant, the officer who arrived at the accident scene did not photograph the scratches on appellant's arm or face, but appellant took photographs the next day. Appellant explained he told the officer his son gave him the scratches because he felt it "was none of his business." In addition, appellant testified he and his wife had been separated for a few months before the incident on March 20, 2017. When asked if it would surprise him that Prater said they were in a relationship for five years, appellant replied "okay." Appellant testified that the officers never requested a field sobriety test or a blood or breath sample and he was never arrested for DWI.

The jury convicted appellant of assault. The trial court set punishment for confinement in jail for one year but suspended the sentence and placed appellant on community supervision for twelve months. In addition, the trial court assessed a $500 fine. The trial court further found that this case involved "an intimate partner" resulting in appellant being unable to possess firearms, handguns or ammunition. The judgment included an affirmative finding of family violence. Appellant then filed this appeal.

## ANALYSIS

### A.    Legal Insufficiency

–4–

Appellant argues that the evidence is legally insufficient (1) to prove appellant assaulted Prater and (2) for an affirmative finding of family violence. We disagree.

### 1. Standard of review

When examining the legal sufficiency of the evidence, we consider all evidence in the light most favorable to the verdict and whether a rational jury could have found each element of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimonies, and the reviewing court must not usurp this role by substituting its own judgment for that of the jury. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The duty of the reviewing court is to ensure the evidence the State presented supports the jury's verdict and the State has presented a legally sufficient case of the offense charged. *Id.*

### 2. Assault

A person commits the offense of assault if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. *See* TEX. PENAL CODE ANN. §22.01(a)(1). Bodily injury is defined as "physical pain, illness, or any impairment of physical condition." *See* TEX. PENAL CODE ANN. §1.07(a)(8) (West Supp. 2018). Any physical pain, however minor, will suffice to establish bodily injury. *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012). A factfinder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it. *Id., Randolph v. State*, 152 S.W.3d 764, 774 (Tex.—App. Dallas 2004, no pet.). In addition, Texas courts have found that evidence of a cut, scrape or bruise on the body is sufficient to show bodily injury. *See Bolton v. State*, 619 S.W.2d 166, 167 (Tex. Crim. App. 1981) (evidence of a cut was sufficient to show bodily injury); *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002,

no pet.) ("The existence of a cut, bruise, or scrape on the body is sufficient evidence of physical pain necessary to establish 'bodily injury' within the meaning of the statute.").

Here, Bancroft testified appellant reached over to get Prater's phone and when he grabbed it, he hit her on the cheekbone with a closed fist. Bancroft further testified when appellant got out of the truck, he went to the passenger side, opened the door and tried to grab the phone from Prater. Officer Brewer also testified he noticed visible injuries on Prater that seemed more consistent with an assault than a traffic accident. Officer Brewer instructed another officer to photograph Prater including the scratches on her arm, a scratch on her neck, and some small abrasions and swelling to her left eye. Officer Brewer further testified that Prater did eventually open up to him and her story was consistent with Bancroft's story. Finally, Brewer testified he believed the women had consumed alcohol but they were not intoxicated and their stories made sense. In addition, the State admitted photographs of Prater following the incident including scratches on her arm, a scratch on her neck, and some small abrasions and swelling to her left eye. Although appellant contested Bancroft's version of the events, the jurors are the sole judges of the credibility of the witnesses and the weight to be given to their testimony. *See Montgomery*, 369 S.W.3d at 192. Further, jurors may choose to believe one witness and disbelieve another and it is not within our province to usurp its reviewing role by substituting its own judgment for that of the jury. *Id*. Accordingly, viewing all evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found beyond a reasonable doubt that appellant assaulted Prater and caused bodily injury. As we conclude that the evidence is legally sufficient to support the assault conviction, we overrule appellant's first issue.

### 3. Relationship

As stated above, appellant was charged with family violence assault. In addition, the charging documents against appellant contained allegations that appellant was in a dating

–6–

relationship with Prater. Following the trial, the trial court made an affirmative finding of family violence based on a dating relationship as required by Texas Code of Criminal Procedure article 42.013.[2] The Penal Code does not itself define a "dating relationship" but rather incorporates by reference the definition used by the Family Code. *See* TEX. PENAL CODE ANN. §22.01(b)(2). The Family Code defines a "dating relationship" as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." *See* TEX. FAM. CODE ANN. §71.0021(b) (West Supp. 2018). The existence of such a relationship shall be determined based on the consideration of: (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship." *Id.* Further, a casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a dating relationship. *See id.* at §71.0021(c).

Appellant argues that the State failed to prove that appellant had a dating relationship with Prater and that the judgment should be reformed to delete the family violence finding. We disagree. Here, Bancroft testified she had hung out with appellant and Prater on three occasions and that their relationship seemed toxic because of all their arguing. When appellant testified, he also confirmed that Bancroft had been out with him and Prater on two or three occasions. In addition, appellant himself stated that he and Prater were in a relationship. When appellant was asked what he and Prater had been arguing about on March 20, 2017, he testified he and Prater "were just kind of at the end of a bad relationship to be honest with you." Appellant later testified that following on the night of March 20, 2017, Prater "was already crying just because we were fighting, and she was being emotional where like I said, at the end of the relationship." Finally,

---

[2] Article 42.013 of the Texas Code of Criminal Procedure provides as follows: "In the trial of an offense under Title 5, Penal Code, if the court determines that the offense involved family violence, as defined by Section 71.004, Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case." TEX. CODE CRIM. PROC. ANN. art. 42.013.

–7–

when asked if it would surprise appellant that Prater said they were in a relationship for five years, appellant replied "okay." Because a rational trier of fact could have concluded, on this evidence viewed in the light most favorable to the verdict, that appellant and Prater were in a dating relationship, we overrule appellant's second issue.

**B.      401 and 403 objections**

Appellant asserts that the trial court erred in denying his Rule 401 and 403 objections to the testimony described below. We disagree.

### 1. Additional facts

At trial, the following exchange took place between counsel and Bancroft:

| [State's atty]: | What did you think was unique about their relationship? |
|---|---|
| [Bancroft]: | That he was married. |
| [Appellant's atty]: | Objection, Your Honor, that's not relevant and it's extremely prejudicial. |
| [State's atty]: | Your Honor, it goes to 38.371, the nature of the relationship and some of the conflict behind it where the discord existed in the relationship, such that it's in no way relevant [sic] - -- it's in no way prejudicial. |
| | It's relevant for the jury to assess the scope of the relationship and why it was tumultuous or why it was toxic. |
| [Court]: | Your objection is overruled. |
| [Appellant's atty]: | Thank you, Your Honor. |

### 2. Extraneous offense / bad act objection

In his brief, appellant appears to argue that the trial court abused its discretion by allowing testimony concerning appellant's marriage because such testimony is inadmissible under Rule 404(b). During trial, however, appellant did not make an objection under Rule 404(b). To preserve error for appellate review, the complaining party must make a timely, specific objection. *See* TEX. R. EVID. 103; TEX. R. APP. P. 33.1. Even if the error had been preserved, however, we do not think

testimony concerning appellant's marriage fits within the context of Rule 404(b).[3]  To the extent appellant argues that his marriage is an "extraneous offense," we disagree as an extraneous offense has been defined as "any act of misconduct, whether prosecuted or not, that is not shown in the charging papers."  Accordingly, we decline to extend the parameters of Rule 404(b) and turn to appellant's relevance objection.

### 3. Relevance objection

Rule 401 provides that evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action.  TEX. R. EVID. 401.  Rule 403 provides the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.  TEX. R. EVID. 403.  A trial court's decision to admit or exclude evidence is viewed under an abuse of discretion standard.  *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).  A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement.  *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996).

Appellant argues that the testimony was not relevant and had no probative value and only served to "inflame the jury and demonize the Appellant in the eyes of the jury."  The State argued that the testimony was relevant pursuant to article 38.371 as it concerned the nature of the relationship.  Article 38.371 of the Texas Code of Criminal Procedure provides that in the prosecution of certain offenses involving family violence that "each party may offer testimony or other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense described by Subsection (a), including

---

[3] Rule 404(b) provides that evidence "of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  *See* TEX. R. EVID. 404(b).

testimony or evidence regarding the nature of the relationship between the actor and the alleged victim." *See* TEX. CODE CRIM. PROC. ANN. art. 38.371(b). The State argued that the testimony was relevant to the nature of the relationship to the extent it demonstrated the toxicity or tumultuousness of the relationship. As the testimony related to the nature of appellant's and Prater's relationship, we cannot conclude that the trial court abused its discretion in overruling appellant's relevance objection. Accordingly, we overrule appellant's third issue.

## CONCLUSION

On the record of this case, we affirm the trial court's judgment.


/David Evans/
DAVID EVANS
JUSTICE


171244F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ERIC DENNIS BUNTON, Appellant

No. 05-17-01244-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 11, Dallas County, Texas
Trial Court Cause No. M17-11986 N.
Opinion delivered by Justice Evans.
Justices Myers and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 20th day of December, 2018.