Patrick A. Pirtle, Justice
Appellant, Anthony Herrera, was convicted following a jury trial of the felony offense of burglary of a habitation, enhanced by a prior felony conviction.[1] He was sentenced to twenty years confinement and assessed a fine of $5,000. In a single issue, Appellant asserts the trial court erred by denying his motion to suppress all evidence stemming from an illegal traffic stop. We modify the trial court's *925 judgment to correct a typographical error and affirm the judgment as modified.
BACKGROUND
In December 2015, an indictment issued alleging that, on September 22, 2015, Appellant did "intentionally or knowingly enter a habitation, without the effective consent of Kevin and Jacqueline Skinner, the owner [sic] thereof, and attempted to commit or committed theft of property, to wit: electronics, jewelry, and a purse, owned by Kevin and Jaqueline Skinner." In January 2016, Appellant filed a motion to suppress all evidence based on an illegal traffic stop. Appellant's motion was denied. He re-urged an objection at trial and it was overruled.
The State's evidence established that on the morning of September 22, 2015, Linda Posada walked out into her front yard to check on two pit bull puppies when she noticed a vehicle parked in front of her house for an extended period of time. She identified the vehicle as a red Monte Carlo being driven by a bald Hispanic male, with multiple tattoos, wearing a white shirt. She had never seen the vehicle in her neighborhood and the driver was looking at the puppies. She became concerned because she believed it was not uncommon for pit bull puppies to be stolen. When she called to her son to take the puppies inside the house, the vehicle drove away and turned at the corner. Posada subsequently saw the vehicle drive down her street several times that day. In the afternoon, she went to the grocery store, and on her return, she observed the same vehicle exiting the alley behind her house with two persons in the vehicle.
Being suspicious of criminal activity, she called the police department because she kept seeing the vehicle in her neighborhood and was concerned for her puppies. When she spoke to the dispatcher, she provided her name and phone number. She told the dispatcher there was a suspicious vehicle driving around her neighborhood as if the occupants were "casing" properties. More particularly, she was concerned because the vehicle was driving around her house.
At that time, Officer Geremiah Rodriguez was on patrol duty and received the dispatch. He learned that Posada had called, identified herself, provided contact information, and was concerned about the "casing" activity of a specific vehicle. She had described the suspicious vehicle and indicated that it was occupied by two persons. The vehicle had been seen driving around the neighborhood streets and alleys throughout the day for extended periods of time. The vehicle was described as a red Monte Carlo being driven by a Hispanic male with multiple tattoos and wearing a white shirt.
When Officer Rodriguez arrived in the area described by Posada, he saw a red Monte Carlo traveling toward him. He believed Posada's information was credible when he observed that the vehicle and the driver matched the description provided by the dispatcher. He made a U-turn, intending to temporarily detain the vehicle's occupants because he had a reasonable suspicion that a crime had been or was about to be committed, and activated his overhead lights. When the driver did not stop, he turned on his siren. The driver finally stopped and jumped from the vehicle. Thereafter, the driver, later identified as Appellant, was arrested when stolen property was discovered in his vehicle.
In the Court's Charge on Guilt and Innocence , the trial court instructed the jury that no evidence obtained or derived by an officer from an unlawful stop and detention is admissible in evidence against the accused. The jury was further instructed that an officer is permitted to make a temporary investigative detention of a motorist if the officer has specific articulable *926 facts, which, taken together with rational inferences from those facts, lead him to conclude that the person being detained actually was, has been, or soon would be engaged in criminal activity. The jury charge continued to instruct as follows:
Now, bearing in mind if you find from the evidence that on the occasion in question that Officer Rodriguez did not have specific articulable facts, which taken together with rational inferences from those facts, led the officer to believe that [Appellant] was, has been or soon would be engaged in criminal activity, then such stopping of the accused would be illegal and, if you find the facts so to be, or if you have a reasonable doubt thereof, you will disregard the testimony of the officer relative to his stopping the Defendant, his conclusions drawn, and any evidence obtained as a result thereof, including statements written or otherwise from the Defendant or any other person and you will not consider such evidence for any purpose whatsoever.
Thereafter, the jury found Appellant guilty of burglary of a habitation with a prior felony conviction. The trial court sentenced Appellant to twenty years confinement and assessed a fine of $5,000.
On appeal, Appellant asserts that the traffic stop was illegal because Officer Rodriguez lacked a reasonable suspicion that a crime had been or soon would be committed. He contends that the information conveyed by the dispatcher to Officer Rodriguez contained no contextual factors that reasonably connected him to any unusual or criminal activity. Appellant contends that the only information known by Officer Rodriguez at the time of the stop was simply that he was driving a vehicle around the neighborhood.
STANDARD OF REVIEW
We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. Turrubiate v. State, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013) ; Ford v. State , 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). We review the trial court's factual findings for an abuse of discretion but review the trial court's application of law to the facts de novo. Id. When the trial court does not issue findings of fact, as here, findings that support the trial court's ruling are implied if the evidence, viewed in a light most favorable to the ruling, supports those findings. Id. In reviewing the trial court's decision, we do not engage in our own factual review; rather, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. St. George v. State, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the findings of the trial judge on (1) questions of historical fact, especially when based on an evaluation of credibility and demeanor and (2) application of law to fact questions that turn on an evaluation of credibility and demeanor. Ford , 158 S.W.3d at 493. Appellate courts review de novo "mixed questions of law and fact" that do not depend upon credibility and demeanor. Id. Ultimately, we review the record to determine whether the trial judge's ruling is supported by the record and correct under some theory of law applicable to the case. St. George, 237 S.W.3d at 725.
INVESTIGATIVE DETENTION
The United States Constitution and the Texas Constitution secure to the individual freedom from all unreasonable searches and seizures. U.S. CONST. amend. VI ; TEX. CONST. art. I, § 9. "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio , 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). See Garza v. State, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989) (stopping an *927 automobile and detaining its occupants for an investigation is considered a "seizure"). An investigative detention occurs when a police officer detains a person reasonably suspected of criminal activity to determine his identity or momentarily maintain the status quo while seeking additional information. Hoag v. State , 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).
An investigatory stop is justified if, based on the totality of the circumstances, the detaining officer has an objective basis for suspecting that the person stopped is, or is about to be, engaged in criminal activity. Carmouche v. State , 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (citing United States v. Cortez , 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed. 2d 621 (1981) ). While a law enforcement officer need not have probable cause to detain an individual for investigative purposes; Hall v. State , 74 S.W.3d 521, 525 (Tex. App.-Amarillo 2002, no pet.), a reasonable suspicion means more than an inarticulate hunch or suspicion. See Bobo v. State , 843 S.W.2d 572, 575 (Tex. Crim. App. 1992) ("Mere suspicions do not meet this test, but neither is absolute certainty required."). See also Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (finding that there must be "some reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication the unusual activity is related to crime").
Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in a criminal activity. Castro v. State , 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). The acts or circumstances need not be criminal themselves to create reasonable suspicion, "if they combine to reasonably suggest the imminence of criminal conduct"; Ramirez-Tamayo v. State , 537 S.W.3d 29, 36 (Tex. Crim. App. 2017), however, the facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to criminal conduct. Derichsweiler v. State, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011), cert. denied, 565 U.S. 840, 132 S.Ct. 150, 181 L.Ed. 2d 67 (2011). Further, "it is not a sine qua non of reasonable suspicion that a detaining officer be able to pinpoint a particular penal infraction." Id.
Thus, we examine the totality of circumstances to determine whether Appellant's detention and the subsequent investigation were reasonable and justified. See Curtis v. State , 238 S.W.3d 376, 380 (Tex. Crim. App. 2007) ; Castro , 227 S.W.3d at 741. This analysis includes the police officers' training and experience. State v. Alderete, 314 S.W.3d 469, 473 (Tex. App.-El Paso 2010, pet. ref'd) ("[W]hen innocent facts, meaningless to the untrained, are used by trained law-enforcement officers, those facts, combined with permissible deductions therefrom, may form a legitimate basis for suspicion of criminal activity.").
The detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists. Derichsweiler, 348 S.W.3d at 914. A police dispatcher is ordinarily regarded as a "cooperating officer" for purposes of making this determination. Id. Finally, information provided to police from a citizen-informant who identifies himself or herself and may be held to account for the accuracy and veracity of his or her report may be regarded as reliable. Id. at 914-15. See *928 Martinez v. State, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011) (citing Brother v. State, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005) ). In such a scenario, the only question is whether the information that the known citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion that criminal activity is afoot. Derichsweiler, 348 S.W.3d at 915. To be sufficient, the activity should "suggest that something of an apparently criminal nature is brewing." Id. at 917 (emphasis supplied).
ANALYSIS
Appellant asserts that the information communicated by Posada to the dispatcher and subsequently conveyed to Officer Rodriguez did not contain specific, articulable facts sufficient to allow him to form a reasonable suspicion that Appellant had been, was, or soon would be engaged in a criminal activity. We disagree.
Posada identified herself when she called the police department. She gave her name, phone number, and a firsthand description of Appellant's activities. She put herself in a position of accountability and was neither a paid informant nor connected to law enforcement. Thus, the information Posada provided to the police certainly could have been regarded as reliable. See Derichsweiler , 348 S.W.3d at 916-17.
The dispatcher conveyed to Officer Rodriguez[2] that Posada had observed a suspicious vehicle driving down her neighborhood streets and alleyways throughout the day. She described the vehicle as a red Monte Carlo and the driver as a Hispanic male, with multiple tattoos, wearing a white shirt. When Officer Rodriguez arrived near the location where the vehicle had been seen, he observed a red Monte Carlo being driven by a man who matched Posada's description. See State v. Stolte, 991 S.W.2d 336, 341 (Tex. App.-Fort Worth 1999, no pet.) (officer's subsequent corroboration of information received from informant may increase the reliability of the information).
These facts indicated to Officer Rodriguez that Appellant was engaging in a pattern of repetitious behavior that was unusual and suspicious, i.e., continuously driving through neighborhood streets and alleyways for an extended period in a manner that was suspicious to a neighborhood resident. See Derichsweiler, 348 S.W.3d at 917 (non-criminal behavior conveyed by identified informant-repeatedly stopping, staring, and smiling in a strange manner at other people and vehicles in public parking lots-held sufficient to allow a reasonable person to conclude "that criminal activity is afoot"). See also Parson v. State, 392 S.W.3d 809, 816 (Tex. App.-Eastland 2012, pet. ref'd) (non-criminal behavior conveyed by identified informant-man in dark-colored pick-up, identified as Stanley, parked in driveway facing residence of ex-girlfriend who feared for her children due to their past relationship-held sufficient to justify reasonable suspicion by officer that domestic violence might occur), cert. denied, 571 U.S. 855, 134 S.Ct. 134, 187 L.Ed. 2d 95 (2013).
Based on our review of the evidence, we conclude that the totality of the circumstances gave rise to a reasonable suspicion that Appellant was about to engage in criminal activity. The facts known to Officer Rodriguez and the dispatcher were sufficient to suggest that something of an apparently criminal nature was brewing. See Derichsweiler, 348 S.W.3d at 917. Accordingly, the trial court did not abuse its discretion by denying Appellant's motion to suppress. Appellant's single issue is overruled.
*929 MODIFICATION OF JUDGMENT
In reviewing the record, it has come to this court's attention that the trial court's Judgment of Conviction by Jury includes a minor clerical error, i.e., it incorrectly identifies the "Statute of Offense" as "30.02(c)(2)" rather than "30.02(a)(3)." This court has the authority to modify the judgment of the court below to make the record speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b). Bigley v. State , 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993).
CONCLUSION
We modify the trial court's Judgment of Conviction by Jury to correct a typographical error by designating the "Statute of Offense" as "30.02(a)(3)" rather than "30.02(c)(2)," and affirm the trial court's judgment as modified.

See Tex. Penal Code Ann. § 30.02(a)(3) (West Supp. 2017). An offense under this section is a second degree felony. Id. at § 30.02 (c)(2). As enhanced, the offense was punishable as a first degree felony. Id. at § 12.42(b).

Officer Rodriguez had been a licensed peace officer and patrolman for three years.