

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

## No. 07- 16-00440-CR
_____

EJOIFOR ONYECHY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court at Law No. 1
Lubbock County, Texas
Trial Court No. 2015-483,480; Honorable Mark Hocker, Presiding

October 11, 2018

## MEMORANDUM OPINION

Before CAMPBELL, PIRTLE, and PARKER, JJ.

Appellant, Ejoifor Onyechy, was convicted following a jury trial of evading arrest or detention and the court assessed punishment at confinement for twelve days.[1] On appeal, Appellant asserts (1) the evidence was insufficient to convict because the State

---

[1] *See* TEX. PENAL CODE ANN. § 38.04(a), (b) (West 2016) (a class A misdemeanor).

did not prove that he knew the officers were attempting to arrest or detain him and (2) the trial court abused its discretion by admitting the contents of a 911 call.  We affirm.

BACKGROUND

In June 2015, an information was filed alleging that on April 29, 2015, Appellant intentionally fled from Donovan Powell, a person he knew was a police officer who was attempting lawfully to arrest or detain him.  On October 10, 2016, a hearing was held on Appellant's motion to exclude a 911 call.  The trial court held that the call was admissible because it was relevant, contextual evidence.  On October 11, a jury trial was held.

The State's evidence established that Max Madubuike made two 911 calls on October 29, 2015.  The first call was made inside an apartment while he was witnessing an argument between Appellant and Appellant's girlfriend.  Madubuike made the call and then placed the phone in his pocket.  The 911 dispatcher heard an ongoing argument, raised voices, yelling, and threats being made against a female.  Although Appellant attempted to keep Madubuike in the apartment, he was eventually able to leave and made a second 911 call from another location.  In the second call, he gave the dispatcher the apartment's location and stated that Appellant had caught him with Appellant's girlfriend. He indicated that Appellant was violent and looked like he was going to hit the girlfriend. He described Appellant as a muscular, black male wearing a navy-blue shirt, black baseball cap, and jeans.  He advised the dispatcher that she might want to send an officer to the apartment.

2

Officers Donovan Powell and Mario Sandoval[2] responded to the dispatcher's call. Both officers were in uniform, wearing badges and fully-equipped holsters. When they arrived at the apartment complex, their primary concern was to separate the couple and perform a welfare check, i.e., make sure everyone was alright. After reaching the apartment, the door opened before an officer could make contact. Officer Powell was facing Appellant and observed that he matched the description given by the dispatcher. He asked Appellant to step out of the apartment to ascertain whether he had a weapon and he refused. When he began closing the apartment door on the officers, Officer Powell placed his foot in the doorway to prevent him from slamming and locking the door. He could see Appellant's girlfriend inside while Appellant pushed back.

After they pushed their way into the apartment, Officer Sandoval took hold of Appellant and pulled him out of the apartment while Officer Powell determined the condition of the girlfriend. Appellant was very upset, acting fidgety, and screaming. He did not respond to the officer's efforts to calm him. In order to maintain the status quo while continuing the investigation, the officers then attempted to place him in handcuffs. They told Appellant they had received a call regarding the apartment. Appellant overpowered both officers and began running through the apartment complex at a full sprint. The officers followed shouting for Appellant to stop.

---

[2] Officer Powell had been a Lubbock Police Department officer for five years and had responded to many domestic disturbance calls. He described such calls as volatile situations where one usually responds with another officer. Officer Sandoval had also been a Lubbock Police Department officer for five years and had responded to numerous domestic violence calls. He described such calls as a high priority because they are the most dangerous calls—the situation may vary from the simplest to the most serious.

Appellant was subsequently discovered hiding on the ground between two cars. He refused to turn over and be handcuffed. Eventually, the officers were able to secure him.

In his first issue, Appellant contends there is insufficient evidence to convict because the State failed to prove that he knew the officers were attempting to detain him when he fled. In his second issue, he asserts the probative value of the contents of the first 911 call was substantially outweighed by the prejudicial value because its admission confused the issues and misled the jury. Because the evidence admitted at trial is determinative of the first issue, logic dictates that we address Appellant's evidentiary issue or second issue first.

ISSUE TWO—911 CALL

Whether evidence is admissible under Rule 403 of the Texas Rules of Evidence is a decision within the sound discretion of the trial court. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991); *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). Under Rule 403 the trial court must determine whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). So long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Montgomery*, 810 S.W.2d at 392.

Because Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value "is substantially outweighed by a danger of . . . unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless [presentation] of

4

cumulative evidence," the trial court must perform a balancing test. TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Montgomery*, 810 S.W.2d at 389. A trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) the tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Casey v. State*, 215 S.W.3d 870, 879-80 (Tex. Crim. App. 2007).

The contents of the first 911 call were relevant to the issue of whether the officers reasonably suspected Appellant had engaged in criminal activity. *Herrera v. State*, 546 S.W.3d 922, 926-27 (Tex. App.—Amarillo 2018, no pet.) (citing *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987)). If the jury believed the officers had such a reasonable suspicion, then it could reasonably find the officers had the authority to detain Appellant to determine his identity and momentarily maintain the status quo by placing him in handcuffs while seeking additional information. *Herrera*, 546 S.W.3d at 927.[3]

---

[3] What the 911 dispatcher knew prior to the incident was also important to a determination of whether the officers had a reasonable suspicion of criminal activity and authority to detain Appellant. The detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, the cumulative information known to the cooperating officers at the time of the detention is to be considered in determining whether reasonable suspicion exists. *Derichsweiler v. State*, 384 S.W.3d 906, 914 (Tex. Crim. App. 2011), *cert. denied*, 565 U.S. 840, 132 S. Ct. 150, 181 L. Ed. 2d 67 (2011). A police dispatcher is ordinarily regarded as a "cooperating officer" for purposes of making this determination. *Id.*

Moreover, the evidence does not go to Appellant's propensity to engage in criminal activity but is background contextual evidence relevant to the trial of *this* offense and its admission would assist the jury to "'fill in the background of the narrative and give it interest, color, and lifelikeness.'" *Mell v. State,* No. 07-14-00207-CR, 2015 Tex. App. LEXIS 9438, at *5 (Tex. App.—Amarillo Sept. 3, 2015, no pet.) (mem. op., not designated for publication) (quoting *Mayes v. State*, 816 S.W.2d 79, 86-87 (Tex. Crim. App. 1991)). As such, it is admissible as contextual evidence. *Mayes*, 816 S.W.2d at 86-87. That is, the evidence is necessary to the jury's understanding of the instant offense because the circumstances of the offense would make little or no sense without the admission of the first 911 call. *Smith v. State*, 200 S.W.3d 644, 649 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). Here, the 911 calls help to explain why the officers were outside the apartment when Appellant opened the door and their reaction to his efforts to close the door on them.

Appellant asserts the trial court abused its discretion by admitting the contents of the first 911 call because of the likelihood that its contents would confuse the issues at trial and mislead the jury. His primary contentions are that its admission was an attempt by the State to impute the officers' knowledge to Appellant and would result in the jury basing its decision on emotion rather than facts. Appellant fails to establish a nexus between these assertions and the admission of the evidence. As such, these contentions are pure speculation as Appellant points to no evidence of record to support either one— only the possibility that either contention may have occurred.

Because Appellant falls short of establishing that the trial court's ruling is *not* within the zone of reasonable disagreement, the trial court did not abuse of discretion by

6

admitting the 911 call.  *See Montgomery*, 810 S.W.2d at 372.  Accordingly, Appellant's second issue is overruled.

ISSUE ONE—SUFFICIENCY OF THE EVIDENCE

The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 33 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).  Under that standard, in assessing the sufficiency of the evidence to support a criminal conviction, this court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319; *Queeman v. State,* 520 S.W.3d 616, 622 (Tex. Crim. App. 2017); *Brooks*, 323 S.W.3d at 912.  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Jackson*, 443 U.S. at 319.  *See Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

Further, the trier of fact is the sole judge of the weight of the evidence and credibility of the witnesses; TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Queeman,* 520 S.W.3d at 622 (citing *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012)); *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008), and we may not re-evaluate the weight and credibility determinations made by the fact finder.  *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  Thus, we resolve any inconsistencies

7

in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The elements of evading arrest or detention are (1) intentionally fleeing (2) from a person whom the defendant knows is a peace officer that is (3) trying to lawfully arrest or detain him. *See* TEX. PENAL CODE ANN. § 38.04(a) (West 2016). The intentionally fleeing party need only know that a peace officer was trying to lawfully arrest or detain him. *Rodriguez v. State*, 799 S.W.2d 301, 302-03 (Tex. Crim. App. 1990); *Thompson v. State*, 426 S.W.3d 206, 209 ((Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). "If proven by the evidence, a refusal to comply with a lawful order, knowing the order came from a police officer, constitutes the offense of evading detention." *Brown v. State*, 127 S.W.3d 68 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (quoting *Green v. State*, 892 S.W.2d 217, 218 (Tex. App.—Texarkana 1995, pet. ref'd)).

Appellant asserts that a reasonable fact finder could not have found beyond a reasonable doubt that he intentionally fled from the officers because he was unaware that they were attempting to detain him. We disagree.

Based on the evidence and reasonable inferences that may be drawn therefrom, the fact finder could have rationally found the essential elements of the offense of evading arrest or detention beyond a reasonable doubt. Viewing the evidence in a light most favorable to the judgment and deferring as we must to the fact finder's credibility assessments, the proof permitted the jury to find that Appellant fled from Officers Powell and Sandoval knowing they were police officers when he was facing the two, uniformed police officers when he opened the apartment door, he was told to step outside, and he

8

refused by shutting the door. *See Waugh v. State*, 51 S.W.3d 714, 718 (Tex. App.—Eastland 2001, no pet.) (when defendant attempted to push the door shut before a police officer could enter the house, he committed the offense of evading arrest or detention). The proof also permitted the jury to find that Appellant fled from the officers when the officers were attempting to handcuff him—he overpowered them, ran away through the apartment complex, and ignored their orders to stop. *Pina v. State*, 127 S.W.3d 68, 75 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (defendant ignored instruction by police officer to stop and fled to a residence); *Green*, 892 S.W.2d 217 at 218 (bicyclist ran to residence after being instructed by a police officer to come over to his patrol car). "'Fleeing is anything less than prompt compliance with an officer's direction to stop.'" *Fernandez v. State*, No. 07-16-00420-CR, 2017 Tex. App. LEXIS 5315, at *5 (Tex. App.—Amarillo June 12, 2017, pet. ref'd) (mem. op., not designated for publication) (quoting *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.)).

Appellant also contends that an offense has not been committed if the defendant does not know the officer's reason for detaining him when he attempts to flee. That the defendant knows the officer's reason for attempting to detain him is not an element of the offense. *See* Tex. Penal Code Ann. § 38.04(a) (West 2016). The intentionally fleeing party need only know that a peace officer is trying to lawfully arrest or detain him. *Rodriguez*, 799 S.W.2d at 302-03. Here, Appellant does not assert that the officers' detention was unlawful. Thus, we need not decide whether there was sufficient evidence for the jury to determine whether Appellant's detention was lawful. That said, however, if we were called upon to decide the issue, we would find that the officers had reasonable suspicion to detain Appellant based upon the 911 calls, his appearance at the apartment

door matching the description by the 911 caller, and his demeanor when confronted by the two uniformed officers.

Based on the evidence and reasonable inferences that may be drawn therefrom, we find the fact finder could have rationally found the essential elements of the offense of evading arrest or detention beyond a reasonable doubt. Accordingly, Appellant's first issue is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.